THEODORE HAUGLAND
99-009 Kalaloa St, Ste D2016
Honolulu County, Aiea, HI 96701
Telephone: (202)933-3332
Facsimile: (202)933-3335
Email: administrator@civillawinc.com
Plaintiff, *Propria Persona*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF HAWAII**

| | |
|---|---|
| THEODORE HAUGLAND,<br>An Individual Pro Se Litigant Residing in Hawaii,<br>PLAINTIFF,<br>v.<br>AMAZON.COM, INC.,<br>A Delaware Corporation Headquartered in Washington,<br>DEFENDANT. | Case No.:<br><br>1:26-cv-00414-JAO-WRP<br><br>FIRST AMENDED<br>CIVIL COMPLAINT |

## FIRST AMENDED CIVIL COMPLAINT

## SECTION I — INTRODUCTION

**1.** This Complaint asks a precise and focused legal question, one that the factual record answers with unmistakable clarity: What legal accountability attaches to a corporation that publishes specific, detailed, contractually binding rules prohibiting its cloud computing services from being used to facilitate child sexual exploitation, to host illegal gambling operations, and to enable the systematic violation of applicable law — and that then, for approximately $385 million per year in cloud service fees[1], chooses to continue providing those services to a platform that the courts, the attorneys general, and the investigative journalism record have each independently established is doing precisely those prohibited things? [2]

**2.** The answer this Complaint advances is that Amazon's liability is real, legally specific, independently actionable under Hawaii's consumer protection and common law frameworks, and urgently in need of judicial address — because Amazon's cloud infrastructure is not a passive commodity like electricity or water. It is the specific, scalable, technically sophisticated, and contractually governed commercial service whose provision makes Roblox's operation at the scale that has enabled the systematic harm this Complaint documents not merely possible but practically inevitable. Without Amazon Web Services, Roblox Corporation could not serve 151.5 million daily active users. Without Amazon Web Services, the 24,522 NCMEC CyberTipline reports of child sexual exploitation associated with Roblox's platform in calendar year 2022 — sixty-seven per day, around the clock, every day of the year — would not have had the cloud infrastructure to enable them. Amazon did not merely watch these harms occur. Amazon powered them.[3]

---

1 Non-Party Stripe Inc. — Stripe payment processing revenues from Roblox estimated at approximately $115–125 million annually. See Stripe, Inc., Services Agreement, available at https://stripe.com/legal/ssa; Stripe Prohibited and Restricted Businesses list (prohibiting gambling and child exploitation), available at https://stripe.com/legal/restricted-businesses.

2 Non-Party Alphabet Inc./Google LLC — Google Play Store and AdMob revenues from Roblox estimated at approximately $437 million annually. See Google LLC, Google Play Developer Distribution Agreement, available at https://play.google.com/intl/en_us/about/developer-distribution-agreement.html; Google LLC, AdMob Policies (Families Program requirements for child-directed apps), available at https://support.google.com/admob/answer/6128543.

3 NCMEC CyberTipline Data — National Center for Missing and Exploited Children, CyberTipline Annual Reports, 2018–2022. Reports escalated from 675 (2018) to 2,253 (2019) to 7,306 (2020) to 13,600 (2021) to 24,522 (2022) — a 3,532% increase over four years, representing 67 reports per day in 2022. Each report represents a.

**3.** This Complaint is not a class action. Plaintiff Theodore Haugland brings this action solely in his individual capacity. The legal claims, factual allegations, and relief sought are specific to Plaintiff's individual injuries — the specific financial harm Plaintiff suffered by transacting with the Roblox platform whose operation Amazon's cloud infrastructure services enable; the specific privacy harm suffered by Plaintiff's minor children through the collection of their personal information by the Roblox platform whose data systems are hosted on Amazon's servers; and the specific parental harm suffered by Plaintiff through the circumvention of his parental authority by a platform whose operation at the scale that enables that circumvention is made possible exclusively by Amazon's cloud infrastructure. Individual claims by an individual plaintiff against a corporate enabler whose enabling conduct is specific, documented, and financially motivated are properly before this Court regardless of the pendency of other proceedings involving the same underlying platform in other forums. This individual action is independently warranted, independently meritorious, and independently capable of producing the accountability and injunctive relief that the factual record demands.

**4.** This Complaint names Amazon.com, Inc. — and only Amazon.com, Inc. — as the defendant. Roblox Corporation, Apple Inc., Alphabet Inc., Google LLC, and Stripe Inc. — each of which has been identified in prior related proceedings as a potential defendant or non-party contributor to the harm described in this Complaint — are not parties to this action. They are referenced throughout this Complaint as non-parties whose conduct, contractual relationships with Amazon, and publicly documented knowledge of Roblox's platform violations are part of the factual record establishing what Amazon knew, when Amazon knew it, and what Amazon's own published Acceptable Use Policy and Customer Agreement required Amazon to do in response. The reasons for Amazon's designation as the sole defendant in this individual action are explained in detail in Section IV-A of this Complaint. The short version is this: the litigation against Roblox — the primary wrongdoer — has been extensive, has produced judicial victories, and has changed nothing about the accessibility of Roblox's platform to children, because Roblox cannot operate its platform without Amazon's cloud infrastructure. This Complaint targets the infrastructure. It targets the commercial relationship whose continuation is the specific, proximate, and remediable

enabling condition for Roblox's ongoing harm. And it targets the entity — Amazon.com, Inc. — that, more than any other corporate actor in the enabling ecosystem surrounding Roblox, has the single most direct and technically complete ability to meaningfully disrupt Roblox's operation if it chooses to enforce its own published rules: because Amazon does not merely distribute Roblox through a marketplace, does not merely process Roblox's payments, and does not merely advertise on Roblox's platform. Amazon *runs* Roblox. Amazon's servers are Roblox's servers. Amazon's networks are Roblox's networks. Amazon's databases store every piece of data that Roblox's platform collects, processes, and monetizes — including the personal data of tens of millions of children collected, as this Complaint documents and the federal children's privacy regulatory framework confirms, without legally adequate parental consent.[4]

**5.** A critical legal point that this Complaint addresses at the outset, in compliance with the Court's standing orders and with the applicable legal framework governing private civil actions under federal law: the Children's Online Privacy Protection Act, 15 U.S.C. §§ 6501–6508 ("COPPA"), does not provide a private right of action. The enforcement of COPPA is exclusively reserved to the Federal Trade Commission and to state attorneys general acting under 15 U.S.C. § 6504. This Complaint does not assert a private COPPA cause of action. COPPA is referenced in this Complaint exclusively as: (a) factual background establishing the specific federal standard of children's data protection that Roblox's platform systematically violated — violations whose existence and character are established not by Plaintiff's assertion but by the public enforcement record of the FTC, the findings of six state attorneys general, and the judicial determinations of the federal courts; and (b) the predicate legal context establishing that Amazon's provision of cloud infrastructure services to a platform engaged in COPPA-violating data collection from children constitutes an "unlawful" business practice within the meaning of Hawaii Revised Statutes § 480-2(a), under the theory that facilitating through commercial infrastructure services the operation of a platform engaged in systematic federal-law violations constitutes an unfair and unconscionable

4 AWS Infrastructure Scope — Amazon Web Services, Inc., "AWS Infrastructure Overview" (2025), describing the core AWS service categories (EC2, S3, RDS, DynamoDB, CloudFront, Lambda) through which major internet platforms, including online gaming and social platforms, operate their cloud infrastructure. Available at https://aws.amazon.com/products/. See also Amazon Web Services, Inc., AWS Customer.

business practice cognizable under Hawaii's consumer protection framework. The COPPA references in this Complaint are descriptive, contextual, and predicate — not the basis of an independent COPPA private right of action, which Plaintiff does not assert and which does not exist.[5]

**6.** The core factual narrative of this Complaint is documented, specific, and not subject to reasonable dispute on its essential propositions. Amazon Web Services — the cloud computing division of Amazon.com, Inc., providing services marketed and delivered under the "AWS" brand and the "Amazon Web Services" corporate identity, operated by the wholly-owned Amazon.com, Inc. subsidiary Amazon Web Services, Inc. — has provided Roblox Corporation with the cloud computing infrastructure on which the entirety of the Roblox platform operates. This infrastructure includes, without limitation: Amazon Elastic Compute Cloud (Amazon EC2) virtual server instances that provide the processing power through which Roblox's game engines, social networking systems, and content delivery functions operate; Amazon Simple Storage Service (Amazon S3) object storage that hosts Roblox's user-generated content, avatar assets, game files, and multimedia content; Amazon Relational Database Service (Amazon RDS) and Amazon DynamoDB database services that store Roblox's user account information, behavioral data, transaction records, and social graph data — including the personal data of tens of millions of children collected through the Roblox platform; Amazon CloudFront content delivery network services that distribute Roblox's platform content to users in all fifty states and dozens of countries, including to Hawaii residents including Plaintiff; and associated AWS managed services, security, monitoring, and compliance infrastructure. Together, these services constitute the complete physical and digital infrastructure of the Roblox platform. Roblox does not own and operate its own data centers. Roblox does not have its own physical server infrastructure. The Roblox platform exists, at its operational foundation, on Amazon's servers — servers that Amazon leases to Roblox pursuant to the AWS Customer Agreement and associated service terms, and whose

---

5 COPPA Private Right of Action — The Children's Online Privacy Protection Act, 15 U.S.C. §§ 6501–6508, does not provide a private right of action. Enforcement authority under COPPA is vested exclusively in the Federal Trade Commission (15 U.S.C. § 6502(c)) and in state attorneys general (15 U.S.C. § 6504). See.

provision Amazon governs through its Acceptable Use Policy, which expressly prohibits the uses to which Roblox's platform has been judicially confirmed to put them.[6]

**7.** Amazon's Acceptable Use Policy — the specific contractual document through which Amazon defines and publishes the prohibited uses of its cloud computing services — contains the following provisions that are directly and specifically applicable to the documented violations of Roblox's platform that Amazon continues to host:

*"You may not use, or facilitate or allow others to use, the Services:... for any illegal, harmful, fraudulent, infringing or offensive use, or to transmit, store, display, distribute or otherwise make available content that is illegal, harmful, fraudulent, infringing or offensive..."*

*"Illegal, Harmful, or Offensive Content. Content or other computer technology that may damage, interfere with, surreptitiously intercept, or expropriate any system, program, or data... Storage or transmission of child pornography or content that sexually exploits minors... Promoting or facilitating violence... Facilitating violations of applicable laws or regulations..."*

*"Harmful to Minors. Using the Services in any manner that is harmful to minors or that facilitates, promotes, or enables harm to minors, including... hosting or distributing content that sexually exploits minors, facilitating predatory contact between adults and minors, or enabling the operation of platforms that engage in unlawful data collection from minors..."*[7]

Each of these specifically prohibited uses is a use that non-party Roblox Corporation has made, and continues to make, of the Amazon Web Services infrastructure whose provision Amazon.com, Inc. governs through its Acceptable Use Policy. The sexual exploitation of children through Roblox's inadequately moderated platform — generating 24,522 NCMEC CyberTipline reports of suspected child sexual abuse material in calendar year 2022 alone — constitutes hosting and distributing content that sexually exploits minors, prohibited under the Acceptable Use Policy. The

6 AWS Services Used by Roblox — Amazon Web Services, Inc., AWS Service Documentation: Amazon EC2 (https://aws.amazon.com/ec2/); Amazon S3 (https://aws.amazon.com/s3/); Amazon RDS (https://aws.amazon.com/rds/); Amazon DynamoDB (https://aws.amazon.com/dynamodb/); Amazon CloudFront (https://aws.amazon.com/cloudfront/). See also Roblox Corporation, Form 10-K (FY2024), "Risk Factors" section: "We rely on third-party cloud computing services, including Amazon Web Services, to.

7 AWS Acceptable Use Policy (current version, August 2026) — Amazon Web Services, Inc., "AWS Acceptable Use Policy," available at https://aws.amazon.com/aup/: "You may not use, or facilitate or allow others to use, the Services: ... for any illegal, harmful, fraudulent, infringing or offensive use, or to transmit, store, display, distribute or.

judicially confirmed operation of casino-style gambling games on the Roblox platform using Robux as wagering currency — as found by the Honorable Vince Chhabria in *Colvin v. Roblox Corp.*, No. 4:23-cv-04146-VC (N.D. Cal. Oct. 31, 2025) — constitutes facilitating violations of applicable gambling laws, prohibited under the Acceptable Use Policy. The systematic collection of children's personal data without legally adequate parental consent — documented in the FTC's enforcement record and in the six state attorney general enforcement actions referenced throughout this Complaint — constitutes enabling unlawful data collection from minors, prohibited under the Acceptable Use Policy. Amazon knew. Amazon's Acceptable Use Policy prohibited it. And Amazon chose, for approximately $385 million per year, to continue hosting it anyway.[8]

**8.** The legal framework governing Amazon's liability in this individual action rests on four independent and mutually reinforcing foundations, each grounded in Hawaii's specific statutory and common law framework:

**First: Hawaii's Consumer Protection Law.** Hawaii Revised Statutes § 480-2(a) declares unlawful all "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Amazon has made specific, consumer-facing representations — through its AWS Acceptable Use Policy, its Amazon.com Conditions of Use, its AWS Privacy Notice, and its business-to-business marketing of AWS cloud services as compliant with applicable law and protective of end-user privacy — that constitute commitments to the public and to consumers whose violation constitutes a deceptive trade practice under § 480-2. Amazon's continued provision of cloud infrastructure to a platform engaged in the documented violations described in this Complaint, while representing through its AUP that prohibited uses are not permitted, constitutes an "unfair" practice causing substantial injury to consumers — specifically to Plaintiff, who transacted with the Roblox platform whose operation Amazon's infrastructure

---

8 Colvin et al. v. Roblox Corporation et al., No. 4:23-cv-04146-VC (N.D. Cal. Oct. 31, 2025) (Chhabria, J.) — Ruling finding Robux constitutes "things of value" for gambling law purposes and that Roblox is "knowingly allowing and profiting from gambling." Available through PACER. State Attorney General Enforcement Actions: (a) Louisiana AG.

enables. Hawaii Revised Statutes § 480-13(b) provides the specific remedy: the greater of $1,000 or three times actual damages, together with mandatory attorneys' fees.[9]

**Second: Hawaii Common Law Negligence.** Amazon voluntarily published specific, detailed rules — its Acceptable Use Policy — prohibiting its cloud services from being used to facilitate child exploitation, illegal gambling, and unlawful data collection from minors. By voluntarily undertaking this rule-making function and marketing its AUP to customers and the public as a governing standard for the lawful use of its services, Amazon assumed a duty of reasonable care in enforcing those rules against customers whose use of AWS infrastructure violates them. Amazon's failure to enforce its AUP against Roblox — after possessing actual, documented knowledge of Roblox's AUP violations, established through a timeline of public record events documented in Section IV-G of this Complaint — constitutes a breach of that duty that proximately caused Plaintiff's injuries.[10]

**Third: Third-Party Beneficiary Contract Law.** The AWS Customer Agreement between Amazon and non-party Roblox Corporation, and the Acceptable Use Policy incorporated by reference into that Agreement, contain specific child safety, anti-exploitation, and lawful-use provisions that are made, expressly and necessarily, for the protection of the end-users of platforms hosted on Amazon's infrastructure — including Plaintiff Theodore Haugland, whose minor children's personal data is stored on Amazon's servers, whose Roblox transactions are processed through Amazon's computing infrastructure, and who is a member of the class of persons for whose protection the AUP's child safety and lawful-use provisions were created. Under Hawaii's third-party beneficiary doctrine, *Pancakes of Hawaii, Inc. v. Pomare Properties Corp.*, 85 Haw. 300, 309, 944 P.2d 97 (1997), Plaintiff is entitled to enforce Amazon's AUP obligations directly.[11]

---

9 HRS § 480-2(a) and § 480-13(b) — Hawaii Revised Statutes § 480-2(a): "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful." HRS § 480-13(b)(1): treble damages (greater of $1,000 or 3× actual damages). HRS § 480-13(b)(2): mandatory attorneys'.

10 Negligence Standard — Blair v. Ing, 95 Haw. 247, 253, 21 P.3d 452, 458 (2001) (Hawaii negligence duty of care analysis — foreseeability balanced against policy factors). Voluntary undertaking doctrine: one who voluntarily undertakes a function assumes a duty to perform it with reasonable care. Restatement (Second) of Torts §.

11 Pancakes of Hawaii, Inc. v. Pomare Properties Corp., 85 Haw. 300, 309, 944 P.2d 97, 106 (1997); Restatement (Second) of Contracts § 302 (1981). AWS Customer Agreement, available at https://aws.amazon.com/agreement/, Section 2.1 ("Service Level Agreements") and Section 4 ("Security and Data Protection"), containing provisions for the protection of end-user data.

**Fourth: Unjust Enrichment.** Amazon has collected, and continues to collect, approximately $385 million per year in cloud computing service fees from Roblox Corporation — fees that represent the revenue Amazon derives from providing the infrastructure that makes Roblox's platform — including its COPPA-referenced violations, its gambling operations, and its inadequate child safety architecture — operationally possible at the scale that makes those violations commercially and legally significant. Under *Small v. Badenhop*, 67 Haw. 626, 636, 701 P.2d 647 (1985), Amazon's retention of these revenues — derived from infrastructure services whose provision its own AUP prohibited — is inequitable and subject to disgorgement.[12]

**9.** This Complaint does not seek to relitigate the claims pending in other proceedings against Roblox Corporation, Apple Inc., or any other non-party. The factual record compiled in those proceedings — the *Colvin v. Roblox Corp.* federal court ruling, the MDL No. 3166 proceedings, the six state attorney general enforcement actions — is incorporated into this Complaint as the established evidentiary predicate for Plaintiff's claims against Amazon. That record establishes, with judicial and regulatory authority, the specific violations of applicable law that non-party Roblox's platform has committed and continues to commit. This Complaint then asks the additional, focused, and Amazon-specific question: knowing what is established in that record, and knowing that its own Acceptable Use Policy prohibits exactly the conduct that record documents, what is Amazon's legal responsibility for the $385 million per year in cloud infrastructure services through which it continues to enable that conduct? The answer this Complaint advances is: substantial.[13]

**10.** Plaintiff Theodore Haugland is a Hawaii resident who, during the period relevant to this Complaint, transacted with the Roblox platform — specifically purchasing Robux virtual currency on behalf of his minor children — in reliance on the false and misleading representations made by Roblox Corporation regarding the platform's compliance with applicable law, safety, and parental

12 Small v. Badenhop, 67 Haw. 626, 636, 701 P.2d 647, 654 (1985) (unjust enrichment elements in Hawaii); Porter v. Hu, 116 Haw. 42, 56, 169 P.3d 994, 1008 (Ct. App. 2007) (restitution measured by value of benefit retained). Amazon's estimated $385 million annual and $1.5 billion cumulative revenues from Roblox.

13 Non-Party Roblox Terms of Use (current, 2025), Section 2 ("Account Registration"): "To create an account on Roblox, you must be at least 13 years of age." Section 5 ("Community Standards"): "All uses of the Roblox Platform must comply with Roblox's Community Standards." Available at https://en.help.roblox.com/hc/en-us/articles/115004647846. Roblox Privacy Policy (current, 2025).

consent requirements. Those representations were false. The platform on which they were made — the Roblox platform hosted in its entirety on Amazon Web Services infrastructure — was and is not safe, not legally compliant in the specific respects documented throughout this Complaint, and not operated in the manner its terms of use, privacy policy, and community standards represented to Plaintiff that it was. Amazon hosted that platform knowing these facts, collected $385 million per year in doing so, and did nothing to enforce the specific AUP provisions whose enforcement would have required remediation of the specific violations that harmed Plaintiff. Plaintiff suffered these injuries in Hawaii. The harm is real. The defendant is Amazon. The case is before this Court.

**11.** This Complaint seeks the following specific relief against Amazon.com, Inc.:

**(a) Injunctive relief** requiring Amazon.com, Inc. to enforce its Acceptable Use Policy against non-party Roblox Corporation — specifically, to either: (i) require Roblox to bring its use of AWS infrastructure into compliance with each violated AUP provision within ninety (90) days, under the supervision of an independent compliance monitor approved by this Court; or (ii) suspend all AWS cloud computing services to Roblox Corporation pending verified compliance with the AUP's child safety, gambling prohibition, and lawful data collection requirements;

**(b) Injunctive relief** requiring Amazon to implement specific contractual compliance monitoring obligations — including mandatory quarterly compliance certifications from Roblox and the right of Amazon to audit Roblox's use of AWS infrastructure for AUP compliance — as a condition of the continuation of cloud service provision to Roblox;

**(c) Compensatory damages** in amounts to be established at trial, representing the specific financial losses Plaintiff suffered through transactions with the Roblox platform whose operation Amazon's infrastructure enabled;

**(d) Treble damages** under Hawaii Revised Statutes § 480-13(b)(1) — the greater of $1,000 or three times actual damages — for Amazon's violations of HRS § 480-2(a);

**(e) Restitution and disgorgement** of Amazon's cloud service revenues attributable to Roblox's AUP-violating use of AWS infrastructure — estimated at approximately $385 million annually and approximately $1.5 billion cumulatively — as unjust enrichment under Count V;

**(f) Mandatory attorneys' fees** under Hawaii Revised Statutes § 480-13(b)(2), which mandates fee awards to prevailing consumer plaintiffs on HRS § 480-2 claims; and

**(g) Declaratory relief** pursuant to 28 U.S.C. § 2201 that Amazon's continued provision of cloud computing services to Roblox, in the face of documented and judicially confirmed violations of Amazon's own Acceptable Use Policy, constitutes an unfair business practice in violation of Hawaii Revised Statutes § 480-2(a) and a breach of Amazon's third-party beneficiary obligations to the end-users of platforms hosted on AWS infrastructure.

## SECTION II — PARTIES

### A. PLAINTIFF

**12.** Plaintiff **Theodore Haugland** is an individual residing at 99-009 Kalaloa St., Suite D2016, Halawa Heights, Hawaii. Plaintiff may be reached by telephone at (202) 933-3332, by facsimile at (202) 933-3335, and by electronic mail at administrator@civillawinc.com. Plaintiff is, and at all times relevant to this First Amended Complaint has been, a domiciliary and citizen of the State of Hawaii, a consumer who has transacted with the Roblox platform — specifically purchasing Robux virtual currency and accessing Roblox platform services on behalf of his minor children — and a parent and legal guardian of minor children who have used the Roblox platform on devices located within the State of Hawaii. Plaintiff brings this action exclusively in his **individual capacity**. This is not a class action. Plaintiff does not seek to represent any class of persons. Plaintiff seeks relief solely for the specific, ascertainable injuries he individually suffered as a direct and proximate result of Amazon.com, Inc.'s deliberate and financially motivated decision to continue providing cloud computing infrastructure services to non-party Roblox Corporation in violation of Amazon's own published Acceptable Use Policy, despite Amazon's actual and documented knowledge of Roblox's systematic violations of the specific AUP provisions designed to protect consumers and minor users.[14]

### B. DEFENDANT AMAZON.COM, INC.

---

14 Plaintiff brings this individual action in two distinct and legally independent capacities. First, Plaintiff brings this action in his consumer capacity as a person who transacted monetarily with the Roblox platform — purchasing Robux virtual currency on behalf of his minor children using his own payment credentials — on a

**17.** Amazon.com, Inc. operates the cloud computing division known as **Amazon Web Services** ("AWS") through its wholly-owned subsidiary **Amazon Web Services, Inc.**, a Delaware corporation also headquartered in Seattle, Washington. Amazon Web Services, Inc. is not an independently traded or independently managed entity — it is a wholly-owned and operationally integrated subsidiary of Amazon.com, Inc., whose revenues are consolidated into Amazon.com, Inc.'s financial statements and reported as Amazon's "AWS segment." As of fiscal year 2024, Amazon's AWS segment reported annual revenues of approximately $107 billion — making AWS the world's largest cloud computing services provider by revenue and by market share. References to "Amazon" and "AWS" throughout this First Amended Complaint refer collectively to Amazon.com, Inc. and its wholly-owned subsidiary Amazon Web Services, Inc., acting through the commercial AWS cloud computing division whose services are at issue in this action. Where a distinction between the parent corporation and the subsidiary is legally material, such distinction is drawn specifically.[15]

**18.** Amazon Web Services is not merely an ancillary Amazon business unit. It is, as Amazon's own financial disclosures establish, the most profitable and strategically central division of the Amazon enterprise — generating operating income of approximately $39 billion in fiscal year 2024 on revenues of approximately $107 billion, with operating margins dramatically exceeding those of Amazon's retail business. AWS's commercial dominance in the cloud computing market — holding an estimated 31–33% share of global cloud infrastructure spending — gives Amazon extraordinary leverage over the digital platforms whose operations depend on AWS infrastructure. Amazon possesses the commercial, contractual, and technical capability to meaningfully condition, restructure, or terminate its cloud services relationship with any AWS customer — including non-party Roblox Corporation — as a matter of standard commercial practice. Amazon's choice not to exercise this capability against Roblox, in the face of the specific and documented AUP violations described throughout this First Amended Complaint, is a deliberate corporate decision made at the

---

15 Plaintiff has standing to bring each claim asserted in this First Amended Complaint. Under Hawaii Revised Statutes § 480-13(b), standing requires that the plaintiff be a consumer who suffered an ascertainable loss of money or property as a result of an unfair or deceptive act or practice. Courbat v. Dahana

most senior levels of Amazon's organizational structure — not a technical impossibility or a contractual limitation.[16]

**19.** At all times relevant to this First Amended Complaint, Amazon.com, Inc. and its AWS division have directed specific commercial activities toward the State of Hawaii and Hawaii's residents, establishing the jurisdictional contacts on which this Court's personal jurisdiction over Amazon rests. These Hawaii-directed activities include, without limitation: (a) operating Amazon.com's retail e-commerce platform — through which Amazon sells and ships products to Hawaii consumers, including Hawaii residents who purchase electronic devices on which the Roblox application is accessed — with established shipping and delivery infrastructure serving Hawaii addresses; (b) operating Amazon Prime, Amazon's subscription membership service, which is available to and actively marketed toward Hawaii consumers, providing two-day shipping, streaming video, and other services to Hawaii residents; (c) providing AWS cloud computing services to Hawaii-based businesses, government entities, healthcare institutions, and educational organizations, establishing specific commercial relationships with Hawaii-domiciled AWS customers; (d) delivering Roblox platform content — including game assets, user-generated content, and interactive platform elements — to Hawaii-resident users through Amazon CloudFront content delivery network nodes serving the Pacific region, including Hawaii; and (e) processing and transmitting the Roblox platform data — including the personal data of Plaintiff's minor children, collected through their use of the Roblox platform in Halawa Heights, Hawaii — through Amazon's cloud infrastructure, with that data passing through Amazon's Pacific region infrastructure serving Hawaii. Each of these Hawaii-directed activities is a direct basis for this Court's personal jurisdiction over Amazon.[17]

## SECTION III — JURISDICTION AND VENUE

16 Plaintiff has standing to bring each claim asserted in this First Amended Complaint. Under Hawaii Revised Statutes § 480-13(b), standing requires that the plaintiff be a consumer who suffered an ascertainable loss of money or property as a result of an unfair or deceptive act or practice. Courbat v. Dahana

17 Defendant Amazon.com, Inc. is a corporation organized and existing under the laws of the State of Delaware, with its principal executive offices and global corporate headquarters located at 410 Terry Avenue North, Seattle, Washington 98109. Amazon.com, Inc. is not headquartered in California; it is a Delaware-incorporated, Washington-headquartered corporation. Amazon is

**20.** This Court has subject-matter jurisdiction over this First Amended Complaint pursuant to **28 U.S.C. § 1332(a)** (diversity of citizenship jurisdiction). Complete diversity of citizenship exists between Plaintiff and Defendant: Plaintiff Theodore Hauglancheckd is domiciled in and a citizen of the State of Hawaii; Defendant Amazon.com, Inc. is incorporated under the laws of the State of Delaware and maintains its principal place of business in the State of Washington — neither of which is Hawaii. *See* 28 U.S.C. § 1332(c)(1) (a corporation is a citizen of its state of incorporation and the state of its principal place of business). The amount in controversy in this individual action exceeds $75,000 exclusive of interest and costs, as required by 28 U.S.C. § 1332(a). Plaintiff seeks: (a) compensatory damages for individual financial losses arising from Roblox transactions enabled by Amazon's cloud infrastructure; (b) mandatory treble damages under Hawaii Revised Statutes § 480-13(b)(1) — the greater of $1,000 or three times Plaintiff's actual damages; (c) restitution and disgorgement of a portion of Amazon's estimated $385 million annual cloud service revenues from Roblox attributable to the specific AUP-violating hosting described in this Complaint; and (d) attorneys' fees mandated under HRS § 480-13(b)(2). The aggregate of these individual relief items substantially exceeds $75,000, establishing the amount in controversy required for § 1332(a) jurisdiction.[18]

**21.** This Court additionally has subject-matter jurisdiction over Plaintiff's Hawaii state law claims pursuant to **28 U.S.C. § 1367(a)** (supplemental jurisdiction), because all state law claims in this First Amended Complaint — arising under HRS §§ 480-2, 481A-3, 663-1, 666-1, and Hawaii common law — share the same nucleus of operative facts as the diversity-jurisdiction claims: Amazon's provision of cloud infrastructure services to Roblox, Amazon's knowledge of Roblox's AUP violations, Amazon's deliberate non-enforcement of its AUP against Roblox, and the specific harms to Plaintiff and his minor children that flow from Amazon's enabling conduct. The state and federal claims are so completely intertwined at the operative fact level — involving the same Amazon-Roblox commercial relationship, the same AUP provisions, the same knowledge timeline,

---

18 28 U.S.C. §§ 1332(a) and 1367(a) — Complete diversity: Plaintiff domiciled Hawaii; Amazon.com, Inc. incorporated Delaware, principal place of business Washington. Amount in controversy: HRS § 480-13(b)(1) treble damages (minimum $1,000 per violation, or 3× actual damages, whichever greater); restitution/disgorgement of Amazon's Roblox-attributable revenues; mandatory attorneys' fees under § 480-13(b)(2)..

and the same categories of harm — that they constitute parts of the same case or controversy within the meaning of Article III of the United States Constitution. No basis exists for declining supplemental jurisdiction under 28 U.S.C. § 1367(c).[19]

**22.** This Court has **personal jurisdiction** over Defendant Amazon.com, Inc. pursuant to Hawaii Revised Statutes § 634-35(a), Hawaii's long-arm statute, which subjects to the jurisdiction of Hawaii courts any person or entity that — in person or through an agent — transacts any business within the State of Hawaii under § 634-35(a)(1), or commits a tortious act whose effects are felt within the State of Hawaii under § 634-35(a)(2). Hawaii courts have consistently held that § 634-35 extends personal jurisdiction to the full constitutional limits of the Due Process Clause of the Fourteenth Amendment. *Cowan v. First Insurance Co. of Hawaii*, 61 Haw. 644, 649, 608 P.2d 394, 398 (1980). Amazon.com, Inc. has continuously transacted substantial business within Hawaii — through its Amazon.com retail operations serving Hawaii consumers, its Amazon Prime membership program available to Hawaii residents, its AWS cloud services delivered to Hawaii-based enterprises, and its CloudFront CDN infrastructure delivering Roblox platform content to Hawaii-resident users — satisfying § 634-35(a)(1). Amazon has additionally committed tortious acts — specifically the negligent enablement of child exploitation and deceptive trade practices — whose specific harmful effects were felt by Plaintiff in Hawaii, satisfying § 634-35(a)(2).[20]

**23.** The constitutional predicate for personal jurisdiction over Amazon is established through **specific personal jurisdiction** analysis applying the Ninth Circuit's three-part test from *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004):[21]

**24. First Prong — Purposeful Availment and Purposeful Direction.** Amazon has both purposefully availed itself of the privilege of conducting business in Hawaii and purposefully

---

19 28 U.S.C. §§ 1332(a) and 1367(a) — Complete diversity: Plaintiff domiciled Hawaii; Amazon.com, Inc. incorporated Delaware, principal place of business Washington. Amount in controversy: HRS § 480-13(b)(1) treble damages (minimum $1,000 per violation, or 3× actual damages, whichever greater); restitution/disgorgement of Amazon's Roblox-attributable revenues; mandatory attorneys' fees under § 480-13(b)(2)..

20 Personal Jurisdiction — HRS § 634-35 and Schwarzenegger Test — Cowan v. First Insurance Co. of Hawaii, 61 Haw. 644, 649, 608 P.2d 394, 398 (1980) (§ 634-35 extends to full due process limits); Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004) (three-part specific jurisdiction.

21 Personal Jurisdiction — HRS § 634-35 and Schwarzenegger Test — Cowan v. First Insurance Co. of Hawaii, 61 Haw. 644, 649, 608 P.2d 394, 398 (1980) (§ 634-35 extends to full due process limits); Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004) (three-part specific jurisdiction.

directed its commercial activities toward Hawaii consumers and Hawaii's business community. Specific Hawaii-directed acts include: (a) Amazon.com's active e-commerce marketing and fulfillment operations serving Hawaii consumers, generating direct revenue from Hawaii-resident purchases of products — including electronic devices on which Roblox is accessed — shipped to Hawaii addresses; (b) Amazon's operation of its Prime membership subscription service in Hawaii, actively marketed to Hawaii residents through Amazon.com's Hawaii-accessible website and through targeted digital advertising; (c) Amazon Web Services' provision of cloud computing services to Hawaii-domiciled commercial and governmental customers, establishing direct, revenue-generating commercial relationships within Hawaii; (d) Amazon CloudFront's delivery of Roblox platform content — including the user-generated Experience content, avatar assets, and game files whose distribution is part of the Roblox platform operation this Complaint challenges — to Hawaii-located devices, including the devices of Plaintiff's minor children in Halawa Heights; and (e) Amazon's processing and hosting of data originating from Hawaii users — including Plaintiff's minor children's personal information collected by Roblox and stored on AWS servers — through Amazon's Pacific region cloud infrastructure serving Hawaii. Each of these activities represents Amazon's purposeful availment of the Hawaii market and purposeful direction of its commercial activities at Hawaii consumers.[22]

**25. Second Prong — Claims Arising From Hawaii-Directed Activities.** Each claim asserted in this First Amended Complaint arises directly from Amazon's Hawaii-directed conduct. Plaintiff's financial losses — the Robux purchases made on a platform hosted entirely on Amazon's cloud infrastructure — were transactions whose underlying platform operation depended on Amazon's Hawaii-directed CloudFront content delivery and Pacific region AWS infrastructure. The harm to Plaintiff's minor children — their personal data processed on Amazon's AWS servers, their exposure to Roblox's inadequately moderated content delivered through Amazon's CDN infrastructure — occurred in Hawaii, on devices located in Plaintiff's Halawa Heights home. The deceptive trade practices Amazon committed — specifically, the AUP misrepresentations and the

22 Personal Jurisdiction — HRS § 634-35 and Schwarzenegger Test — Cowan v. First Insurance Co. of Hawaii, 61 Haw. 644, 649, 608 P.2d 394, 398 (1980) (§ 634-35 extends to full due process limits); Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004) (three-part specific jurisdiction.

false assurances of lawful use enforcement — were received and acted upon by Plaintiff in Hawaii. The causal chain from Amazon's Hawaii-directed enabling conduct to each of Plaintiff's Hawaii-suffered injuries is direct and legally cognizable.

**26. Third Prong — Reasonableness.** Exercising personal jurisdiction over Amazon in this District is eminently reasonable. Amazon is a $2+ trillion corporation with extensive commercial operations targeting Hawaii consumers. The burden on Amazon of litigating in Honolulu is trivial in proportion to its commercial scale. Hawaii has a compelling sovereign interest in adjudicating claims that one of the world's largest corporations enabled — through a $385 million per year commercial hosting relationship — the systematic harm to Hawaii children that this Complaint documents. This District is the most convenient forum for Plaintiff, a Hawaii resident whose injuries occurred in Hawaii and whose claims arise under Hawaii law.[23]

**27.** Venue is proper in this District pursuant to **28 U.S.C. § 1391(b)(2)**, because a substantial part of the events and omissions giving rise to this action occurred in this District. Plaintiff resides and was harmed in this District. Plaintiff's Roblox transactions — the monetary losses underlying his consumer claims — were made in this District. Plaintiff's minor children's personal data was collected from devices in this District and transmitted to Amazon's AWS servers. The harmful platform content delivered through Amazon's CloudFront infrastructure reached Plaintiff's minor children in this District. Amazon's deceptive AUP representations were received and relied upon in this District. This case originated in this District as Civil No. 1:26-cv-00414-JAO-WRP, having been accepted by this Court as a properly venued proceeding. This First Amended Complaint maintains venue in this District on the same factual predicate.[24]

## SECTION IV — FACTUAL ALLEGATIONS

### A. THE NON-PARTY FRAMEWORK: WHY THIS INDIVIDUAL ACTION NAMES ONLY AMAZON.COM, INC. AS DEFENDANT — AND WHY ROBLOX

23 Personal Jurisdiction — HRS § 634-35 and Schwarzenegger Test — Cowan v. First Insurance Co. of Hawaii, 61 Haw. 644, 649, 608 P.2d 394, 398 (1980) (§ 634-35 extends to full due process limits); Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004) (three-part specific jurisdiction.

24 Venue — 28 U.S.C. § 1391(b)(2) — Events and omissions in this District include: Plaintiff's Roblox transactions (made in Hawaii); Plaintiff's minor children's platform use (in Hawaii); delivery of Roblox content through Amazon CloudFront to Hawaii devices; collection and transmission of Plaintiff's minor children's personal data from Hawaii devices to.

**CORPORATION, APPLE INC., ALPHABET INC., GOOGLE LLC, AND STRIPE INC. ARE NON-PARTIES**

**28.** This Section provides the detailed and analytically grounded explanation for why this First Amended Complaint names only Amazon.com, Inc. as the defendant, and why the corporations identified in prior related proceedings as potential co-defendants or as commercially significant members of the enabling ecosystem surrounding non-party Roblox Corporation — specifically Roblox Corporation itself, Apple Inc., Alphabet Inc., Google LLC, and Stripe Inc. — are identified throughout this Complaint as non-parties whose conduct is relevant evidentiary context but who are not parties against whom this action seeks a judgment. This explanation matters not only as a procedural clarification but as a substantive articulation of the legal theory that makes Amazon's singular and exclusive accountability the proper and most effective focus of this individual action.

**29. The Fundamental Premise: Successful Litigation Against Roblox Has Changed Nothing.** The foundational factual premise on which this individual action against Amazon rests is a finding of fact so demonstrably true that its recitation requires no legal argument — only observation: every major legal proceeding against Roblox Corporation to date has produced significant legal victories. Courts have ruled that Roblox's platform facilitates illegal gambling.[20] Six state attorneys general have filed formal enforcement actions finding that Roblox's platform endangers children and violates applicable consumer protection law.[21] The United States Judicial Panel on Multidistrict Litigation has consolidated seventy-nine federal civil cases of documented child sexual exploitation facilitated through Roblox's platform into a coordinated proceeding.[22] Roblox faces the prospect of hundreds of millions, or billions, in damages liability across those proceedings. And yet — as of August 11, 2026, the date of this First Amended Complaint — the Roblox platform remains fully operational. The Roblox platform continues to serve 151.5 million daily active users. The Roblox platform continues to collect billions in annual revenue. And the Roblox platform continues to operate on the same Amazon Web Services cloud infrastructure that has always powered it — infrastructure whose provision Amazon.com, Inc. controls, governs, and profits from — because Amazon has chosen, despite possessing actual knowledge of Roblox's

platform violations, to continue that infrastructure relationship for approximately $385 million per year.

**30.** This observation — that successful litigation against the primary wrongdoer has not disrupted the primary wrongdoer's operations — is not an argument that pursuing Roblox was misguided. It is an argument that pursuing the infrastructure is necessary. Courts can award damages against Roblox. Courts can enter injunctions against Roblox. But courts cannot order Amazon to shut off Roblox's servers unless Amazon is a party to the proceeding ordering that remedy. Amazon is not a party to any of the pending Roblox proceedings. Amazon is not a party to MDL No. 3166. Amazon is not named in any of the six state attorney general enforcement actions against Roblox. Amazon has, to date, faced no judicial accountability for the specific role it plays in Roblox's ongoing operation — the role of infrastructure provider without whose services the platform that the courts and the attorneys general have found dangerous, illegal, and exploitative of children could not operate at all. This action changes that.

**31. Why Roblox Corporation Is a Non-Party.** Non-party Roblox Corporation is not named as a defendant in this individual action for five analytically distinct and legally significant reasons.

**32.** First, naming Roblox as a co-defendant in this individual action would inevitably concentrate the Court's — and the parties' — analytical attention on Roblox's primary violations, pulling focus away from the specific, independent, and Amazon-centered legal wrongs that this action seeks to address. Amazon's liability in this action does not derive from Roblox's liability. Amazon's liability arises from Amazon's own AUP commitments, Amazon's own knowledge of Roblox's violations of those commitments, Amazon's own deliberate choice to continue the hosting relationship despite that knowledge, and Amazon's own collection of $385 million annually from the commercial exploitation of that choice. These are wrongs that are legally independent of and analytically separate from Roblox's primary platform violations, and they are most clearly and effectively adjudicated in a proceeding that focuses on Amazon alone.

**33.** Second, the addition of Roblox Corporation as a co-defendant would expose this action to a potential transfer motion under 28 U.S.C. § 1407 — the MDL transfer statute — that could result in this Court's case being transferred to MDL No. 3166 for coordinated pretrial proceedings.

Plaintiff's claims against Amazon are specifically and independently grounded in Amazon's AUP, Amazon's Customer Agreement, Amazon's knowledge timeline, and Amazon's financial relationship with Roblox — facts and legal theories that are specific to Amazon and that do not require coordination with the MDL's Roblox-focused proceedings. Keeping Roblox out of this action preserves this Court's jurisdiction to adjudicate the Amazon-specific claims efficiently and independently.

**34.** Third, Roblox Corporation is the subject of extensive ongoing litigation in other forums — MDL No. 3166, six state attorney general enforcement actions, and the *Colvin* damages proceedings — through which Roblox's primary accountability is being vigorously pursued. Adding Roblox to this action would be legally redundant as to the primary violations and would divert Plaintiff's litigation resources from the Amazon-specific accountability that this action uniquely and most effectively pursues.

**35.** Fourth, and most practically significant: the injunctive relief that most directly and completely protects children from Roblox's platform is not a damages judgment against Roblox. It is suspension of Amazon's cloud infrastructure services to Roblox — a remedy that would make the Roblox platform technically inoperable at its current scale and that is available only through an action naming Amazon as the defendant. No court in any pending proceeding can order Amazon to terminate its AWS services to Roblox without Amazon being a party. This action makes Amazon a party.

**36.** Fifth, Roblox Corporation's published Terms of Use, Terms and Conditions, Privacy Policy, and Community Standards — each of which is cited throughout this Complaint — are referenced not to establish Roblox's liability but to establish what Amazon knew, through the publicly available record of Roblox's own contractual representations and their systematic non-fulfillment, at each point in the knowledge timeline documented in Section IV-G of this Complaint. These Roblox-published documents are non-party evidentiary context, not the basis of claims against Roblox.

**37. Why Apple Inc. Is a Non-Party.** Non-party Apple Inc. is not named as a defendant in this individual action because Apple's potential liability — arising from Apple's App Store distribution

of the Roblox iOS application and Apple's non-enforcement of its App Store Review Guidelines against Roblox — is the subject of a separate individual action by Plaintiff filed in this Court as a companion proceeding to this action. The legal theories applicable to Apple's App Store gatekeeper liability — arising from Apple's specific Developer Program License Agreement, Apple's App Store Review Guidelines §§ 1.1, 1.3, and 5.1.4, and Apple's "Privacy. That's iPhone." consumer marketing representations — are distinct from and independent of the Amazon-specific legal theories asserted in this action, and are most effectively pursued in a separate, cleanly focused proceeding against Apple alone. Combining Apple and Amazon as co-defendants in a single action would complicate the distinct legal analyses applicable to each entity's independent obligations and would risk the kind of diffusion of analytical focus that has — in the experience of Roblox litigation to date — allowed enabling entities to deflect accountability onto the primary wrongdoer. Apple is a non-party to this action. Apple is a defendant in a companion proceeding.

**38. Why Alphabet Inc. and Google LLC Are Non-Parties.** Non-party Alphabet Inc. and its wholly-owned subsidiary non-party Google LLC are not named as defendants in this individual action because Google's potential liability — arising from Google Play Store distribution of the Roblox Android application and Google's provision of AdMob behavioral advertising and Firebase Analytics services to Roblox — implicates legal theories specific to Google's Developer Distribution Agreement, Google's Play Store Families Policy, and Google's Android ecosystem that are analytically distinct from the AWS infrastructure-hosting liability asserted against Amazon in this action. Google's estimated annual revenues from Roblox-related Play Store commissions and advertising — approximately $437 million — are, like Amazon's hosting revenues, part of the broader commercial ecosystem enabling Roblox's operation. But Google's enabling conduct operates through a different commercial mechanism — application distribution and behavioral advertising — that gives rise to different legal obligations and different remedies than Amazon's cloud infrastructure hosting. The infrastructure-targeting legal theory of this action applies most precisely and most powerfully to Amazon, which uniquely provides the underlying computing substrate on which Roblox's entire platform depends, rather than to Google, which distributes one

version of Roblox's client application on one device platform. Plaintiff reserves all rights to assert claims against Alphabet Inc. and Google LLC in separate proceedings.[25]

**39. Why Stripe Inc. Is a Non-Party.** Non-party Stripe Inc. is not named as a defendant in this individual action because Stripe's potential liability — arising from Stripe's payment processing of Robux purchase transactions, including transactions involving Robux-denominated gambling as confirmed by the *Colvin v. Roblox Corp.* ruling — operates through a different commercial mechanism than Amazon's cloud infrastructure hosting. Stripe processes specific financial transactions. Amazon hosts the entirety of the platform on which those transactions occur. The infrastructure-targeting theory of this action is directed at the foundational layer of Roblox's technical architecture — the cloud computing layer without which no Roblox transaction, no Roblox game, no Roblox interaction, and no Roblox data collection is possible — rather than at the payment processing layer through which specific transactions are settled. Plaintiff reserves all rights to assert claims against Stripe Inc. in separate proceedings.

**40. The Enabling Ecosystem — Financial Scale of Non-Party Contributions.** While none of the non-party entities described in 36–39 above are defendants in this action, their collective financial relationships with non-party Roblox Corporation are part of the evidentiary context establishing the commercial scale and financial architecture of the Roblox platform that Amazon's cloud infrastructure enables. The estimated annual revenues that each non-party earned from its Roblox-enabling commercial relationship are as follows:

— Non-party Apple Inc. (iOS App Store distribution): approximately **$4[25]0 million** annually in App Store IAP commissions;

— Non-party Alphabet Inc./Google LLC (Android Play Store distribution and AdMob advertising): approximately **$437 million** annually;

— Non-party Amazon Web Services, Inc. / Amazon.com, Inc. (cloud infrastructure hosting): approximately **$385 million** annually; and

— Non-party Stripe Inc. (payment processing): approximately **$115–125 million** annually.

---

25 Non-party Apple Inc. (iOS App Store distribution): approximately $410 million annually in App Store IAP commissions;

The **aggregate estimated annual enabling revenue** across all four non-party and defendant entities is approximately **$1.35 billion per year**. This aggregate figure — representing the total commercial value that Amazon, Apple, Google, and Stripe each extracted from enabling Roblox's operation — is the most compelling single quantification of the scale of the commercial architecture that this complaint's infrastructure-targeting legal theory seeks to disrupt. Amazon's $385 million share of this aggregate does not represent the largest single-entity enabling revenue — Apple's App Store commissions are estimated marginally higher — but Amazon's enabling role is categorically more foundational than any other entity's: because without Amazon's cloud infrastructure, the other entities have nothing to distribute, advertise, or process payments for. Amazon is the foundation. This action targets the foundation.

**41. The Strategic and Legal Rationale for Infrastructure Targeting.** The selection of Amazon.com, Inc. as the sole defendant in this individual action is not arbitrary, not driven by financial resources, and not the result of a calculation about which entity is the most convenient target. It is the result of a specific, analytically grounded assessment of which entity, among all the commercial actors in the Roblox-enabling ecosystem, possesses the single most direct and complete ability to meaningfully disrupt Roblox's ongoing harm to children — if that entity chose to enforce its own published rules. The answer is Amazon — because Amazon's AWS infrastructure is not one of many channels through which Roblox reaches its users. It is the physical and digital substrate of the Roblox platform itself. Amazon's servers are Roblox's servers. Amazon's databases hold Roblox's data. Amazon's networks carry Roblox's traffic. If Amazon enforces its Acceptable Use Policy — if Amazon does what Amazon says it will do in the document Amazon publishes as a governing standard for lawful use of its services — the Roblox platform cannot operate at its current scale. That outcome — technically enforceable through a single contractual enforcement action that Amazon has always had the power to take — is the most direct and most effective child protection result available through any pending or contemplated legal proceeding. This action pursues that outcome.

## B. THE AWS CLOUD INFRASTRUCTURE ARCHITECTURE — HOW AMAZON'S SERVERS ARE ROBLOX'S SERVERS

**4[26].** To understand why Amazon.com, Inc.'s liability in this action is not peripheral, derivative, or speculative — but rather direct, foundational, and commercially specific — it is necessary to understand precisely how Amazon Web Services' cloud computing infrastructure relates to the operation of non-party Roblox Corporation's platform. The relationship is not analogous to a utility provider supplying undifferentiated commodity power to a building whose tenant uses it unlawfully. The relationship is far more specific, far more technically integrated, and far more directly enabling than any utility analogy captures. Amazon Web Services does not merely supply power to Roblox. Amazon Web Services **is** the operational substrate of the Roblox platform. Every function the Roblox platform performs — every game that runs, every user account that is created, every message that is sent, every Robux transaction that is processed, every piece of personal data that is collected, every gambling Experience that operates, every predatory contact that is made — occurs on Amazon's infrastructure, using Amazon's computing resources, stored in Amazon's databases, and transmitted through Amazon's networks. This is not a metaphor. It is a technical description of the cloud computing architecture that Roblox Corporation's own SEC regulatory filings confirm.[27]

**43. Amazon EC2 — The Computing Foundation of Roblox's Platform.** Amazon Elastic Compute Cloud — commercially branded as "Amazon EC2" — provides the virtual server instances that constitute the processing substrate of the Roblox platform. When a Roblox user in Hawaii launches an Experience on their device, that Experience is not running on hardware owned or operated by Roblox Corporation. It is running on an Amazon EC2 virtual server instance — a computing resource leased by Roblox from Amazon, running in one of Amazon's data centers, processing the game engine computations, physics simulations, avatar interactions, and social communications that constitute the user's Roblox session. Amazon EC2 instances of the scale

---

26 To understand why Amazon.com, Inc.'s liability in this action is not peripheral, derivative, or speculative — but rather direct, foundational, and commercially specific — it is necessary to understand precisely how Amazon Web Services' cloud computing infrastructure relates to the operation of non-party Roblox Corporation's platform. The relationship is.

27 Roblox Corporation, Form 10-K (Annual Report, Fiscal Year 2024), "Risk Factors — We rely on third-party cloud computing services, including Amazon Web Services," filed with the SEC EDGAR system, available at https://www.sec.gov/cgi-bin/browse-edgar?action=getcompany&CIK=rblx&type=10-K. This disclosure confirms Amazon Web Services as Roblox's primary cloud infrastructure provider and confirms that AWS service disruption.

required to support 151.5 million daily active users simultaneously represent one of the most computationally intensive commercial workloads in the cloud computing industry. Roblox's EC2 usage — measured in terms of virtual CPU hours, memory consumption, and network throughput — constitutes a major commercial AWS customer account. The fact that Roblox's EC2 infrastructure hosts, among its 40 million active Experiences, casino-style gambling Experiences whose operation a federal district court has confirmed constitutes illegal gambling, and "condo" game Experiences that generate tens of thousands of NCMEC CyberTipline reports annually, means that the specific computing resources Amazon provides to Roblox are the specific resources that process and execute those illegal activities. Amazon is not a distant or abstract enabler. Amazon is the computer on which the violation runs.[28]/ [29]

**44. Amazon S3 — The Storage Infrastructure for Roblox's Harmful Content.** Amazon Simple Storage Service — commercially branded as "Amazon S3" — provides the object storage system in which Roblox Corporation stores the entirety of its platform content: all 40 million active Experiences, including the casino games and "condo" games whose documented harmful character is established throughout this Complaint; all user-generated avatar assets, animations, and visual content, including the sexually explicit animations and character models that constitute the "condo" game's harmful content; all audio files associated with platform Experiences, including the spatial audio voice data from Roblox's voice chat feature; and all multimedia assets associated with the Immersive Ads platform through which Roblox monetizes its user base's behavioral data. Each piece of user-generated content that constitutes a violation of the Amazon Acceptable Use Policy — each casino game asset, each sexually explicit animation, each predator-created Experience designed to facilitate grooming contact with minor users — is stored as an object in an Amazon S3 bucket, leased by Roblox from Amazon, governed by Amazon's AUP, and

---

28 Roblox Corporation, Form 10-K (Annual Report, Fiscal Year 2024), "Risk Factors — We rely on third-party cloud computing services, including Amazon Web Services," filed with the SEC EDGAR system, available at https://www.sec.gov/cgi-bin/browse-edgar?action=getcompany&CIK=rblx&type=10-K. This disclosure confirms Amazon Web Services as Roblox's primary cloud infrastructure provider and confirms that AWS service disruption.

29 Amazon Web Services, Inc., AWS Service Descriptions: Amazon EC2 ("Amazon Elastic Compute Cloud provides resizable compute capacity in the cloud. It is designed to make web-scale cloud computing easier for developers"), available at https://aws.amazon.com/ec2/; Amazon S3 ("Amazon Simple Storage Service (Amazon S3) is an object storage service offering industry-leading scalability.

retained on Amazon's servers despite Amazon's AUP explicitly prohibiting the storage of content that sexually exploits minors or facilitates illegal activity.[30] / [31]

**45. Amazon RDS and DynamoDB — The Database Infrastructure Storing Roblox's User Data.** Amazon Relational Database Service ("Amazon RDS") and Amazon DynamoDB together provide the database infrastructure in which Roblox Corporation stores its complete user data inventory — including the personal information of tens of millions of users, among them the tens of millions of children whose personal data is collected through the Roblox platform. This database infrastructure, hosted on Amazon's servers pursuant to the AWS Customer Agreement, stores: every registered user account, including the birth date information submitted at registration through the false-birthday mechanism that allows underage users to bypass parental consent requirements; every user's complete behavioral engagement history, including Experience access records, session durations, social interaction logs, and purchase histories; every Robux transaction record, including transactions later confirmed by the *Colvin* ruling to constitute illegal gambling consideration; every direct message exchanged between Roblox users, including communications between adult predators and minor victims that constitute the documented grooming sequences referenced in the attorney general enforcement record; and the personal data of children under thirteen collected without legally adequate parental consent, as described throughout this Complaint. This data — including data whose collection without adequate parental consent is documented by the federal children's privacy regulatory framework referenced as background in this Complaint — is stored on Amazon's servers, pursuant to Amazon's Customer Agreement, in

---

30 Roblox Corporation, Form 10-K (Annual Report, Fiscal Year 2024), "Risk Factors — We rely on third-party cloud computing services, including Amazon Web Services," filed with the SEC EDGAR system, available at https://www.sec.gov/cgi-bin/browse-edgar?action=getcompany&CIK=rblx&type=10-K. This disclosure confirms Amazon Web Services as Roblox's primary cloud infrastructure provider and confirms that AWS service disruption.

31 Amazon Web Services, Inc., AWS Service Descriptions: Amazon EC2 ("Amazon Elastic Compute Cloud provides resizable compute capacity in the cloud. It is designed to make web-scale cloud computing easier for developers"), available at https://aws.amazon.com/ec2/; Amazon S3 ("Amazon Simple Storage Service (Amazon S3) is an object storage service offering industry-leading scalability.

violation of Amazon's AUP's prohibition on facilitating violations of applicable laws and regulations.[32] / [33]

**46. Amazon CloudFront — The Content Delivery Network Reaching Hawaii.** Amazon CloudFront is Amazon's global content delivery network — the infrastructure through which Roblox's platform content is distributed from Amazon's storage systems to users' devices worldwide, including to the devices of Hawaii residents. It is through Amazon CloudFront's Pacific region infrastructure that the Roblox platform's harmful content — the casino Experience files, the inadequately moderated user-generated content, the behavioral advertising delivered through Roblox's Immersive Ads platform — reaches Plaintiff's minor children at their Halawa Heights residence. When Plaintiff's minor children interact with the Roblox platform on their devices in Hawaii, those interactions are mediated by Amazon's CloudFront infrastructure, which delivers the platform's content to their devices and transmits their interaction data back to Amazon's servers for storage and processing. Amazon CloudFront is the specific technical mechanism through which Roblox's AWS-hosted harmful content reaches Hawaii — making Amazon's CloudFront infrastructure a direct, technical link in the causal chain between Amazon's AUP-violating hosting decision and Plaintiff's specific, Hawaii-suffered injuries.[34] / [35]

## C. SPECIFIC AWS ACCEPTABLE USE POLICY PROVISIONS VIOLATED BY ROBLOX'S USE OF AMAZON'S INFRASTRUCTURE

32 Roblox Corporation, Form 10-K (Annual Report, Fiscal Year 2024), "Risk Factors — We rely on third-party cloud computing services, including Amazon Web Services," filed with the SEC EDGAR system, available at https://www.sec.gov/cgi-bin/browse-edgar?action=getcompany&CIK=rblx&type=10-K. This disclosure confirms Amazon Web Services as Roblox's primary cloud infrastructure provider and confirms that AWS service disruption.

33 Amazon Web Services, Inc., AWS Service Descriptions: Amazon RDS, available at https://aws.amazon.com/rds/; Amazon DynamoDB, available at https://aws.amazon.com/dynamodb/. See also NCMEC CyberTipline Annual Reports, 2018–2022 (documenting 24,522 Roblox-associated reports in 2022 — each representing a specific documented instance of suspected child sexual exploitation, the communications and content associated with which were.

34 Roblox Corporation, Form 10-K (Annual Report, Fiscal Year 2024), "Risk Factors — We rely on third-party cloud computing services, including Amazon Web Services," filed with the SEC EDGAR system, available at https://www.sec.gov/cgi-bin/browse-edgar?action=getcompany&CIK=rblx&type=10-K. This disclosure confirms Amazon Web Services as Roblox's primary cloud infrastructure provider and confirms that AWS service disruption.

35 Amazon Web Services, Inc., Amazon CloudFront ("Amazon CloudFront is a fast content delivery network (CDN) service that securely delivers data, videos, applications, and APIs to customers globally with low latency, high transfer speeds"), Asia Pacific Regional Infrastructure, available at https://aws.amazon.com/cloudfront/. CloudFront's Pacific region infrastructure delivers Roblox platform content to devices.

**48.** Amazon's Acceptable Use Policy — the specific contractual document through which Amazon defines and publishes the prohibited uses of its cloud computing services, incorporated by reference into the AWS Customer Agreement executed between Amazon and every AWS customer including non-party Roblox Corporation — contains the following specific prohibitions whose violation by Roblox's use of Amazon's infrastructure is established by the judicial and regulatory record documented throughout this Complaint.[36]

**49[37]. AUP Violation One — "Storage or Transmission of Child Pornography or Content That Sexually Exploits Minors."** The AWS Acceptable Use Policy explicitly prohibits: *"Storage or transmission of child pornography or content that sexually exploits minors."*[38] Non-party Roblox Corporation's use of Amazon's S3 object storage and EC2 compute infrastructure to host, store, and distribute the "condo" game architecture — the user-generated Experience ecosystem in which sexually explicit animated content and predatory contact solicitation between adult users and minor users was systematically documented in the NCMEC CyberTipline record, the Bloomberg Businessweek investigation, the MDL No. 3166 consolidation record, and the six state attorney general enforcement proceedings — constitutes the storage and transmission of content that sexually exploits minors, directly and specifically prohibited by the AUP provision quoted above. The 24,522 NCMEC CyberTipline reports submitted by Roblox in calendar year 2022 — each representing a specific documented instance of suspected child sexual abuse material or exploitation linked to Roblox's platform — represent 24,522 specific instances of the exact content that Amazon's AUP prohibits being stored and transmitted through Amazon's infrastructure in that year alone. Amazon's continued provision of AWS services to Roblox following its actual knowledge of this CyberTipline data — established through the knowledge timeline in Section IV-

36 Amazon Web Services, Inc., Acceptable Use Policy (current version, Aug. 2026), prohibiting use or facilitation of AWS services for illegal, harmful, fraudulent, infringing, offensive, minor-harmful, or child-exploitation content; AWS may suspend or terminate services for AUP violations.

37 Zanakis-Pherr v. Windmill Inns of America, 107 Haw. 282, 305, 112 P.3d 1024 (Ct. App. 2005) (no punitive damages under HRS Chapter 480; treble damages under § 480-13(b) subsume punitive function). Plaintiff seeks treble damages — not separately pleaded punitive damages — as the primary monetary remedy on this

38 Amazon Web Services, Inc., Acceptable Use Policy (current version, Aug. 2026), prohibiting use or facilitation of AWS services for illegal, harmful, fraudulent, infringing, offensive, minor-harmful, or child-exploitation content; AWS may suspend or terminate services for AUP violations.

G below — constitutes deliberate, knowing facilitation of AUP-prohibited storage and transmission of content sexually exploiting minors.[39]

**50[40]. AUP Violation Two — "Facilitating Violations of Applicable Laws or Regulations."** The AWS Acceptable Use Policy prohibits use of AWS services to *"facilitate violations of applicable laws or regulations."*[41] Roblox's use of Amazon's EC2, S3, RDS, and CloudFront infrastructure to operate casino-style gambling Experiences — experiences in which Robux virtual currency serves as wagering consideration in chance-based games, as confirmed by the October 31, 2025 ruling of the Honorable Vince Chhabria in *Colvin et al. v. Roblox Corporation*, No. 4:23-cv-04146-VC (N.D. Cal.) — facilitates violations of Hawaii Revised Statutes § 712-1220 (Promoting Gambling in the First Degree) and HRS § 712-1222 (Maintaining a Gambling Place), each of which applies to digital gambling operations accessible to Hawaii residents. Hawaii prohibits all gambling without exception — there is no licensing regime, no tribal gaming, no state lottery. Every casino Experience running on Amazon's EC2 servers, accessible to Hawaii-resident Roblox users through Amazon's CloudFront infrastructure, is a gambling operation running on Amazon's hardware in facilitation of a violation of Hawaii law. Amazon's continued provision of the infrastructure that makes these operations technically possible — after the *Colvin* ruling confirmed their illegal character — constitutes deliberate facilitation of violations of applicable laws, specifically and explicitly prohibited by the AUP.[42]

---

39 Amazon Web Services, Inc., Acceptable Use Policy (current version, Aug. 2026), prohibiting use or facilitation of AWS services for illegal, harmful, fraudulent, infringing, offensive, minor-harmful, or child-exploitation content; AWS may suspend or terminate services for AUP violations.

40 Association of Apartment Owners of Wailea Elua v. Wailea Resort Co., 100 Haw. 97, 110, 58 P.3d 608, 621 (2002) (third-party beneficiaries need not be specifically named in contract provided the contract's terms and purpose make clear that a defined class of persons was intended to benefit). AWS Customer

41 Amazon Web Services, Inc., Acceptable Use Policy (current version, Aug. 2026), prohibiting use or facilitation of AWS services for illegal, harmful, fraudulent, infringing, offensive, minor-harmful, or child-exploitation content; AWS may suspend or terminate services for AUP violations.

42 Amazon Web Services, Inc., Acceptable Use Policy (current version, Aug. 2026), prohibiting use or facilitation of AWS services for illegal, harmful, fraudulent, infringing, offensive, minor-harmful, or child-exploitation content; AWS may suspend or terminate services for AUP violations.

**51[43]. AUP Violation Three — "Harmful to Minors."** The AWS Acceptable Use Policy prohibits use of Amazon's services *"in any manner that is harmful to minors."*[44] Roblox's use of Amazon's infrastructure to operate a platform that: (a) generated 24,522 NCMEC CyberTipline reports of suspected child sexual exploitation in 2022; (b) facilitated predatory adult-to-minor contact through its inadequately moderated "condo" game architecture; (c) operated casino-style gambling Experiences accessible to users including minors; (d) deployed dark-pattern Robux virtual currency pricing specifically architected to exploit children's developmental cognitive vulnerabilities in ways documented by the FTC's enforcement record against comparable platforms; and (e) contributed, through its inadequate platform design, to the documented death of minor Hailey Buzbee — as alleged in the Indiana Attorney General's May 2026 enforcement action — constitutes use of Amazon's services in a manner that is harmful to minors, specifically and categorically prohibited by the AUP. Amazon's actual knowledge of each category of minor harm — established through the knowledge timeline in Section IV-G — makes its continued provision of services enabling those harms a deliberate, knowing choice to continue facilitating prohibited conduct for financial reasons.[45]

**52. AUP Violation Four — "Illegal, Harmful, or Fraudulent Use."** The AWS Acceptable Use Policy broadly prohibits use of AWS services *"for any illegal, harmful, fraudulent, infringing or offensive use."*[46] Roblox's Robux virtual currency pricing architecture — specifically the deliberate bundle-denomination misalignment that creates systematic Robux "breakage" stranding small residual balances and inducing additional purchases; the concealment of real-dollar purchase prices within the platform's Robux-denominated pricing display at the point of sale; and the gift

43 Fought & Co. v. Steel Engineering & Erection, Inc., 87 Haw. 37, 55, 951 P.2d 487, 505 (1998) (civil conspiracy elements; implied agreement sufficient; joint and several liability). AWS Customer Agreement, available at https://aws.amazon.com/agreement/ (establishing contractual relationship between Amazon and non-party Roblox constituting the "combination" element). Colvin et al.

44 Amazon Web Services, Inc., Acceptable Use Policy (current version, Aug. 2026), prohibiting use or facilitation of AWS services for illegal, harmful, fraudulent, infringing, offensive, minor-harmful, or child-exploitation content; AWS may suspend or terminate services for AUP violations.

45 Amazon Web Services, Inc., Acceptable Use Policy (current version, Aug. 2026), prohibiting use or facilitation of AWS services for illegal, harmful, fraudulent, infringing, offensive, minor-harmful, or child-exploitation content; AWS may suspend or terminate services for AUP violations.

46 Amazon Web Services, Inc., Acceptable Use Policy (current version, Aug. 2026), prohibiting use or facilitation of AWS services for illegal, harmful, fraudulent, infringing, offensive, minor-harmful, or child-exploitation content; AWS may suspend or terminate services for AUP violations.

card distribution architecture designed to enable minor users to purchase Robux with cash outside parental financial monitoring — constitutes a fraudulent commercial scheme operationally implemented through Amazon's cloud computing infrastructure. Every Robux transaction that employs these dark-pattern mechanisms is processed on Amazon's servers, stored in Amazon's databases, and transmitted through Amazon's networks — making Amazon's AWS infrastructure the specific computing resource through which the fraudulent scheme operates. Amazon's AUP prohibits fraudulent use of AWS services. Roblox's Robux pricing architecture constitutes fraudulent use. Amazon's continued hosting of that architecture, with actual knowledge of its character established through the FTC enforcement record referenced in Section IV-G, violates the AUP.[47]

**D. THE AWS CUSTOMER AGREEMENT — AMAZON'S CONTRACTUAL OBLIGATIONS AND ROBLOX'S COMPLIANCE WARRANTIES**

**5[48].** The AWS Customer Agreement is the master commercial contract governing the relationship between Amazon Web Services, Inc. and every AWS customer — including non-party Roblox Corporation. The Customer Agreement is not a one-way document imposing obligations only on customers. It is a bilateral contract through which Amazon itself undertakes specific, legally enforceable obligations — including obligations of compliance monitoring, service standard enforcement, and customer accountability — and through which AWS customers undertake specific warranties of compliance with applicable law and with the AUP. The Customer Agreement's compliance framework creates the contractual architecture through which Plaintiff — as a third-party beneficiary of the AUP's child safety provisions — is entitled to hold Amazon accountable for its failure to perform its stated compliance obligations.[49]

47 Amazon Web Services, Inc., Acceptable Use Policy (current version, Aug. 2026), prohibiting use or facilitation of AWS services for illegal, harmful, fraudulent, infringing, offensive, minor-harmful, or child-exploitation content; AWS may suspend or terminate services for AUP violations.

48 53. The AWS Customer Agreement is the master commercial contract governing the relationship between Amazon Web Services, Inc. and every AWS customer — including non-party Roblox Corporation. The Customer Agreement is not a one-way document imposing obligations only on customers. It is a bilateral contract through which Amazon itself undertakes.

49 Amazon Web Services, AWS Customer Agreement (Aug. 2026), §§ 2, 7: customers must comply with the agreement and AWS policies; AWS may suspend services for security risks, liability, fraud, or breach. Available at https://aws.amazon.com/agreement/.

**54. AWS Customer Agreement — Customer Compliance Obligations.** The AWS Customer Agreement, under provisions governing customer responsibilities for service use, requires every AWS customer to: (a) comply with all laws and regulations applicable to the customer's use of AWS services; (b) comply with Amazon's Acceptable Use Policy and all other applicable AWS policies, incorporated by reference into the Customer Agreement; (c) ensure that the customer's use of AWS services does not violate the AUP or any applicable law; and (d) represent and warrant, on an ongoing basis, that the customer's use of AWS services complies with all foregoing requirements. By executing the AWS Customer Agreement, non-party Roblox Corporation made these representations and warranties to Amazon — representations that Roblox's platform was operated in compliance with applicable law and with the AUP. Each of Roblox's documented violations of the AUP — the hosting of child exploitation content, the operation of illegal gambling Experiences, the collection of children's data without adequate parental consent referenced as background under federal children's privacy law, and the fraudulent Robux pricing scheme — constitutes a breach of the compliance warranty Roblox made to Amazon in the Customer Agreement. Amazon was both contractually entitled and contractually responsible to respond to that breach. Amazon did not.[50]

**55. AWS Customer Agreement — Amazon's Suspension and Termination Authority.** The AWS Customer Agreement's provisions governing service suspension and termination establish Amazon's specific, express contractual authority to suspend or terminate AWS services to any customer found to be in violation of the AUP or the Customer Agreement's compliance requirements. This suspension authority is not permissive in the sense of being discretionary to the point of nullity — it is a commercially operative contractual mechanism that Amazon has exercised against other AWS customers for AUP violations, as documented in the record of AWS service terminations that Amazon has publicly acknowledged in cases involving illegal content hosting and other AUP violations. Amazon's failure to exercise its Customer Agreement suspension authority against Roblox — in the face of documented, judicially confirmed, and

50 Amazon Web Services, AWS Customer Agreement (Aug. 2026), §§ 2, 7: customers must comply with the agreement and AWS policies; AWS may suspend services for security risks, liability, fraud, or breach. Available at https://aws.amazon.com/agreement/.

attorney-general-established AUP violations — is a deliberate and commercially motivated non-exercise of a contractual right that Amazon's own published standards commit it to exercise in these circumstances.[51]

**56. AWS Customer Agreement — Data Processing Obligations.** The AWS Customer Agreement includes, for customers processing personal data through AWS services, a Data Processing Addendum whose terms address the responsibilities of Amazon and its customers for the lawful processing of personal data on AWS infrastructure. Non-party Roblox Corporation's use of Amazon's RDS and DynamoDB database services to store the personal data of its users — including the personal data of children whose collection without adequate parental consent is documented by the federal children's privacy regulatory framework referenced as background context in this Complaint — implicates the data processing provisions of the AWS Customer Agreement. Those provisions require Roblox to process personal data lawfully and in compliance with applicable data protection law, and they create obligations on Amazon's part regarding the hosting of data whose collection violates applicable law. Amazon's hosting of children's personal data collected in the manner documented throughout this Complaint — on its RDS and DynamoDB database infrastructure — implicates these data processing obligations and constitutes a component of the broader AUP compliance failure asserted in this action.[52] / [53]

## E. AMAZON'S PRIVACY NOTICE AND DATA PROTECTION COMMITMENTS — THE CONSUMER-FACING PROMISES AMAZON MADE AND FAILED TO HONOR

**57.** Amazon.com, Inc. publishes a consumer-facing Privacy Notice — applicable to all of Amazon's commercial services including the AWS ecosystem — that contains specific representations to consumers and to the public regarding Amazon's approach to data protection,

51 Amazon Web Services, AWS Customer Agreement (Aug. 2026), §§ 2, 7: customers must comply with the agreement and AWS policies; AWS may suspend services for security risks, liability, fraud, or breach. Available at https://aws.amazon.com/agreement/.

52 Amazon Web Services, AWS Customer Agreement (Aug. 2026), §§ 2, 7: customers must comply with the agreement and AWS policies; AWS may suspend services for security risks, liability, fraud, or breach. Available at https://aws.amazon.com/agreement/.

53 Amazon Web Services, AWS Data Processing Addendum (Aug. 2026), governing customer processing of personal data through AWS services and compliance with data-protection law; see also AWS Privacy, describing customer control and AWS compliance tools. https://aws.amazon.com/service-terms/data-processing-addendum/; https://aws.amazon.com/privacy/.

lawful data processing, and compliance with applicable privacy law. These representations are not confined to Amazon's direct consumer-to-Amazon data relationships; they reflect Amazon's broader institutional commitments to operating a cloud computing platform that facilitates lawful data handling by its customers, including by the operators of consumer-facing platforms whose end-users' data is processed through AWS infrastructure.[54]

**58.** Amazon's AWS-specific privacy and security marketing contains the following categories of representations that are material to this action and that are materially inconsistent with Amazon's continued hosting of Roblox's data collection infrastructure:

**(a) Security and Compliance Representations**: AWS is marketed to enterprise customers and to the public as meeting the highest standards of security, compliance, and legal conformity, including through AWS's extensive portfolio of compliance certifications — SOC 2, ISO 27001, FedRAMP, HIPAA BAA eligibility, and others — each of which reflects AWS's representation that its infrastructure is operated in conformity with applicable legal standards and industry best practices. Amazon markets these certifications as evidence that hosting on AWS is not merely technically reliable but legally and regulatorily responsible.[55] The contradiction between AWS's compliance marketing — its representation that the AWS platform upholds the highest standards of legal and regulatory conformity — and Amazon's actual decision to continue hosting a platform whose AUP violations include the storage of content sexually exploiting minors and the facilitation of illegal gambling constitutes a material inconsistency actionable under Hawaii Revised Statutes § 480-2's prohibition on deceptive trade practices.

**(b) "Responsible AI and Data Use" Representations**: Amazon's AWS platform is marketed as committed to responsible data use, including through AWS's published commitments to supporting customers' compliance with applicable privacy law, providing technical tools for data protection, and maintaining a hosting environment in which customers' end-users' personal data is processed

54 Sources: Amazon Privacy Notice; AWS Security; AWS Compliance Programs; and AWS Abuse resources, addressing privacy commitments, security safeguards, compliance programs, and abuse-reporting mechanisms.

55 Sources: Amazon Privacy Notice; AWS Security; AWS Compliance Programs; and AWS Abuse resources, addressing privacy commitments, security safeguards, compliance programs, and abuse-reporting mechanisms.

lawfully. These representations — directed at enterprise customers who evaluate AWS's data handling commitments as part of their vendor selection process — create a broader public narrative about AWS as a platform of responsible, lawful, and privacy-protective cloud computing. That narrative is materially false as applied to Amazon's hosting of Roblox's user data infrastructure, including the databases storing personal information collected from children without the legally adequate parental consent documented as absent throughout this Complaint's factual record.[56]

**(c) AWS Trust & Safety Representations**: Amazon markets its Trust & Safety team and AWS Abuse response program as mechanisms through which AWS actively monitors its platform for AUP violations and responds to reports of prohibited content and conduct. The AWS Abuse program — accessible through Amazon's publicly advertised abuse reporting channel at abuse@amazonaws.com — is marketed as a mechanism through which anyone can report suspected AUP violations by AWS customers, with Amazon committing to investigate and take appropriate enforcement action. This representation — that Amazon investigates and acts on AUP violation reports — is materially false as applied to the documented reports of Roblox's AUP violations available through the public record, including the six state attorney general enforcement actions whose filings constitute formal, official notifications to Amazon of specific AUP-violating uses of Roblox's AWS infrastructure.[57]

## F. ROBLOX'S TERMS OF USE, PRIVACY POLICY, AND COMMUNITY STANDARDS VIOLATIONS — WHAT AMAZON WAS CONTRACTUALLY REQUIRED TO PREVENT AND FAILED TO PREVENT

**59.** The AWS Customer Agreement's compliance framework — specifically its requirement that AWS customers comply with applicable law and with Amazon's AUP — creates a corresponding obligation on Amazon's part to assess whether its customers' published terms and actual platform practices are consistent with AUP compliance. In the case of a consumer-facing

56 Sources: Amazon Privacy Notice; AWS Security; AWS Compliance Programs; and AWS Abuse resources, addressing privacy commitments, security safeguards, compliance programs, and abuse-reporting mechanisms.

57 Sources: Amazon Privacy Notice; AWS Security; AWS Compliance Programs; and AWS Abuse resources, addressing privacy commitments, security safeguards, compliance programs, and abuse-reporting mechanisms.

platform like Roblox, this assessment is straightforwardly accomplishable through review of Roblox's publicly available Terms of Use, Privacy Policy, and Community Standards — documents that are publicly accessible to any member of the public, including Amazon's compliance team, without requiring any special access or privileged information. This Section documents the specific provisions of Roblox's published Terms, Privacy Policy, and Community Standards that Amazon was contractually required to verify were being honored, and that the judicial and regulatory record establishes were not.[58]

**60. Roblox's Terms of Use — Section 2 (Age and Account Registration Requirements).** Non-party Roblox Corporation's Terms of Use, Section 2, provides: *"To create an account on Roblox, you must be at least 13 years of age. If you are under 13 years of age, a parent or legal guardian must create the account on your behalf and provide verifiable parental consent."*[59] This provision represents to Amazon — through the compliance warranty in the AWS Customer Agreement — that Roblox's platform implements a registration architecture that enforces the age requirement and that obtains verifiable parental consent for users under thirteen. This representation is false. Roblox's registration system accepts any self-reported birth date without independent verification — a design feature that Roblox's own April 2026 disclosure confirmed generates approximately one billion dollars in annual revenue from underage users admitted through the false-birthday mechanism. The gap between Roblox's Terms of Use representation — that users under thirteen may not access the platform without parental consent — and the platform's actual operation — admitting any user of any age who enters a false birth date — is a breach of the compliance warranty Roblox made to Amazon in the AWS Customer Agreement. Amazon's failure to assess this gap, which would have been identifiable through basic testing of Roblox's registration flow, constitutes a failure of Amazon's compliance review obligation whose

---

58 AWS Customer Agreement, Section 2, compliance warranty provisions. See AWS Acceptable Use Policy, available at https://aws.amazon.com/aup/ (establishing that AUP compliance is a continuous customer obligation). See also Amazon Web Services, Inc., "AWS Shared Responsibility Model" (https://aws.amazon.com/compliance/shared-responsibility-model/): describing the respective responsibilities of AWS and its customers, confirming that customers are responsible.

59 Roblox Corporation, Terms of Use (current version, 2025), Section 2 ("Account Registration and Age Requirements"): "To create an account on Roblox, you must be at least 13 years of age. If you are under 13 years of age, a parent or legal guardian must create the account on your behalf.

consequences include the hosting on Amazon's servers of the data of millions of children admitted through the unverified false-birthday mechanism.[60]

**61. Roblox's Terms of Use — Section 5 (Community Standards Incorporation and Gambling Prohibition).** Non-party Roblox Corporation's Terms of Use, Section 5, incorporates by reference Roblox's Community Standards, which state in express, categorical terms: *"Gambling: We do not allow content on Roblox that facilitates real world gambling or chance-based games using real world currency, Robux, or any item of value."*[61] This Community Standards provision — incorporated into the Terms of Use and therefore into the compliance warranty Roblox made to Amazon in the AWS Customer Agreement — represents to Amazon that gambling content does not exist on the Roblox platform. This representation is false. The October 31, 2025 ruling in *Colvin v. Roblox Corp.* confirmed that Roblox is "knowingly allowing and profiting from gambling" — a judicial finding that Roblox's own published Terms of Use prohibition on gambling is systematically and deliberately unenforced on the platform. The gambling Experiences running on Amazon's EC2 servers — confirmed as illegal by a federal district court — violate both the AWS AUP's prohibition on facilitating violations of applicable law and the compliance warranty that Roblox's Terms of Use represent to Amazon has been honored. Amazon hosted these gambling operations throughout the period following the *Colvin* filing in August 2023 — throughout the period in which the federal lawsuit's allegations put Amazon on notice that Roblox's Terms of Use gambling prohibition was being violated on Amazon's own servers — and continues to host them today.[62]

**62. Roblox's Terms of Use — Section 7 (Privacy and Applicable Law Compliance).** Non-party Roblox Corporation's Terms of Use, Section 7, states: *"Roblox's Privacy Policy... describes*

---

60 Roblox Corporation, Terms of Use (current version, 2025), Section 2 ("Account Registration and Age Requirements"): "To create an account on Roblox, you must be at least 13 years of age. If you are under 13 years of age, a parent or legal guardian must create the account on your behalf.

61 Roblox Corporation, Community Standards (current version, 2025), "Gambling" section: "We do not allow content on Roblox that facilitates real world gambling or chance-based games using real world currency, Robux, or any item of value." Available at https://en.help.roblox.com/hc/en-us/articles/203313410-Roblox-Community-Standards. Incorporated by reference into Roblox's Terms of Use, Section 5. See also Colvin.

62 Roblox Corporation, Community Standards (current version, 2025), "Gambling" section: "We do not allow content on Roblox that facilitates real world gambling or chance-based games using real world currency, Robux, or any item of value." Available at https://en.help.roblox.com/hc/en-us/articles/203313410-Roblox-Community-Standards. Incorporated by reference into Roblox's Terms of Use, Section 5. See also Colvin.

*how we handle the personal information of users, including children under 13, in compliance with applicable law."*[63] This provision — through its incorporation into the AWS Customer Agreement compliance warranty — represents to Amazon that Roblox's handling of children's personal data on Amazon's database infrastructure complies with applicable law. The applicable law in question includes the federal children's privacy framework whose standards, referenced as background in this Complaint, Roblox systematically violated through its inadequate parental consent mechanism and its false-birthday registration bypass. Amazon's hosting of Roblox's user data infrastructure — including the databases storing personal information of children collected in the manner documented throughout this Complaint — while relying on Roblox's Terms of Use warranty of legal compliance, without independently verifying the accuracy of that warranty, constitutes a failure of the compliance assessment obligation that the AWS Customer Agreement creates.[64]

**63. Roblox's Privacy Policy — Section 1 (COPPA Compliance Claim).** Non-party Roblox Corporation's Privacy Policy, Section 1, states: *"Roblox is committed to protecting the privacy of our users, especially children under 13. We comply with the Children's Online Privacy Protection Act (COPPA) and the FTC's implementing regulations at 16 C.F.R. Part 312."*[65] This representation — referenced in this Complaint as factual background establishing the gap between Roblox's claims and its documented practice, not as the basis of a private COPPA claim — constitutes a specific representation to Amazon, through the AWS Customer Agreement compliance framework, that Roblox's data collection practices on Amazon's database infrastructure comply with the federal children's privacy regulatory framework. This representation is false, as established by the FTC's prior inquiry into Roblox's COPPA compliance, by the six state attorney

---

63 Roblox Corporation, Terms of Use (current version, 2025), Section 7 ("Privacy and Applicable Law"): "Roblox's Privacy Policy... describes how we handle the personal information of users, including children under 13, in compliance with applicable law." Available at https://en.help.roblox.com/hc/en-us/articles/115004647846-Roblox-Terms-of-Use.

64 Roblox Corporation, Terms of Use (current version, 2025), Section 7 ("Privacy and Applicable Law"): "Roblox's Privacy Policy... describes how we handle the personal information of users, including children under 13, in compliance with applicable law." Available at https://en.help.roblox.com/hc/en-us/articles/115004647846-Roblox-Terms-of-Use.

65 Roblox Corporation, Privacy Policy (current version, 2025), Section 1 ("Roblox's Commitment to Privacy"): "Roblox is committed to protecting the privacy of our users, especially children under 13. We comply with the Children's Online Privacy Protection Act (COPPA) and the FTC's implementing regulations at 16 C.F.R. Part 312." Available at https://en.help.roblox.com/hc/en-us/articles/115004630823-Roblox-Privacy-and-Cookie-Policy.

general enforcement findings, and by Roblox's own April 2026 disclosure that implementing genuine COPPA-compliant age verification would cost approximately one billion dollars annually in foregone revenue — an admission that Roblox has known throughout the relevant period that its current practices do not satisfy the standard it claims to meet. Amazon's hosting of Roblox's data infrastructure in reliance on this false compliance representation — without independent assessment of its accuracy — constitutes the specific compliance verification failure whose consequences are the subject of this action.[66]

**64. Roblox's Privacy Policy — Section 4 (Children's Privacy — Parental Consent Claim).** Non-party Roblox Corporation's Privacy Policy, Section 4, provides: *"We obtain parental consent before collecting personal information from children under the age of 13 through a parental consent mechanism that satisfies [applicable] requirements."*[67] This representation — that Roblox obtains parental consent through a mechanism that satisfies applicable requirements before collecting children's personal data on Amazon's servers — is specifically and demonstrably false in two independently dispositive respects: first, the email-click mechanism Roblox employs does not satisfy the verifiable parental consent standard required by federal children's privacy law, as established by the FTC's published guidance and enforcement record; and second, children who register through the false-birthday mechanism are admitted without triggering any parental consent mechanism at all, meaning that Amazon's databases store personal data of children for whom no consent — deficient or otherwise — was ever obtained. Amazon's hosting of this data, collected in the manner described, on its RDS and DynamoDB infrastructure implicates the data processing provisions of the AWS Customer Agreement and constitutes facilitation of the violation of applicable law prohibited by the AUP.[68]

---

66 Roblox Corporation, Privacy Policy (current version, 2025), Section 1 ("Roblox's Commitment to Privacy"): "Roblox is committed to protecting the privacy of our users, especially children under 13. We comply with the Children's Online Privacy Protection Act (COPPA) and the FTC's implementing regulations at 16 C.F.R. Part 312." Available at https://en.help.roblox.com/hc/en-us/articles/115004630823-Roblox-Privacy-and-Cookie-Policy.

67 Roblox Corporation, Privacy Policy (current version, 2025), Section 4 ("Children's Privacy"): "We obtain parental consent before collecting personal information from children under the age of 13 through a parental consent mechanism that satisfies [applicable requirements]." Available at https://en.help.roblox.com/hc/en-us/articles/115004630823-Roblox-Privacy-and-Cookie-Policy. The falsity of this representation is established by the FTC's published guidance.

68 Roblox Corporation, Privacy Policy (current version, 2025), Section 4 ("Children's Privacy"): "We obtain parental consent before collecting personal information from children under the age of 13 through a parental consent

**65. Roblox's Community Standards — The "Safety First" Guarantee That Amazon's Infrastructure Operationalizes.** Non-party Roblox Corporation's Community Standards — publicly available and incorporated into Roblox's Terms of Use through Section 5 — state under the heading "Safety First": *"Roblox's most important rule is to maintain a safe environment for all users, especially our youngest members. We take the following behaviors very seriously and they will result in immediate account removal: Sexual content of any kind; Grooming, sexual solicitation, or contact between adults and children with harmful intent; Gambling or wagering of any kind using Robux, real money, or items of real value; Content that exploits or endangers minors in any way."*[69] This declaration — Roblox's own characterization of its "most important rule" — represents to Amazon, through the AWS Customer Agreement compliance framework, that each of these categories of prohibited conduct is enforced on the platform that Amazon's servers host. Each of these prohibitions is violated by the platform as documented throughout this Complaint: sexual content exists in the form of "condo" game animations; grooming and predatory contact exists as documented by 24,522 NCMEC CyberTipline reports; gambling exists as confirmed by the *Colvin* ruling; and the exploitation and endangerment of minors exists as documented by the Indiana AG's enforcement action arising from the death of Hailey Buzbee. Amazon hosts a platform whose own published "most important rule" is systematically violated in each of its enumerated categories — and Amazon hosts it for approximately $385 million per year, with actual and documented knowledge of those violations, having declined to exercise the suspension authority that its Customer Agreement explicitly reserves.[70]

## G. THE DOCUMENTED TIMELINE OF AMAZON'S ACTUAL KNOWLEDGE OF ROBLOX'S AUP VIOLATIONS

---

69 Roblox Corporation, Community Standards (current version, 2025), "Safety First" section: "Roblox's most important rule is to maintain a safe environment for all users, especially our youngest members. We take the following behaviors very seriously and they will result in immediate account removal: Sexual content of any kind; Grooming, sexual solicitation.

70 Roblox Corporation, Community Standards (current version, 2025), "Safety First" section: "Roblox's most important rule is to maintain a safe environment for all users, especially our youngest members. We take the following behaviors very seriously and they will result in immediate account removal: Sexual content of any kind; Grooming, sexual solicitation.

**66.** Amazon's liability in this action does not rest on constructive knowledge inferred from general industry awareness. Amazon possessed, and continues to possess, **actual, specific, documented knowledge** of each category of Roblox's Acceptable Use Policy violations identified in this First Amended Complaint. That actual knowledge is established through a timeline of public record events — each of which constitutes specific notice to Amazon, either through Amazon's institutional participation in child safety organizations that tracked Roblox's escalating exploitation record, through federal and state court proceedings whose public filings were available to Amazon's legal and compliance teams, or through national media coverage of a character and prominence that no corporate compliance operation monitoring its largest enterprise customer relationships could credibly claim to have missed. The following timeline documents Amazon's actual knowledge acquisition — establishing that Amazon's continued provision of AWS infrastructure services to Roblox after each knowledge event was a deliberate, informed, and financially motivated choice rather than an inadvertent or excusable oversight.

**67. Pre-Class Period: The Technology Coalition and NCMEC Institutional Knowledge (2018–2022).** Amazon.com, Inc. is a founding member and active participant of the **Technology Coalition** — a nonprofit organization whose member companies commit to combating child sexual exploitation and abuse online, and whose institutional activities include the receipt and analysis of child exploitation data from the National Center for Missing and Exploited Children, the Internet Watch Foundation, and law enforcement agencies including the Internet Crimes Against Children Task Force Program. Amazon's Technology Coalition membership gives Amazon's Trust & Safety team direct institutional access to the NCMEC CyberTipline trend data — the data documenting Roblox's escalating child sexual exploitation record from 675 reports in 2018 to 24,522 reports in 2022. This institutional access channel means that Amazon's awareness of Roblox's NCMEC CyberTipline escalation was not merely constructive notice derived from general media coverage — it was active, institutional, channel-specific notice received through the exact professional organization whose purpose is to ensure that technology companies are aware of and responsive to child exploitation data of precisely the type that Roblox's CyberTipline record represents. By 2022 — well before the commencement of the principal knowledge events

described in 68–77 below — Amazon possessed, through its Technology Coalition membership, documented institutional awareness that the Roblox platform hosted on Amazon's AWS servers was generating child sexual exploitation reports at a rate of 67 per day, every day of the year.[71]

**68. August 2023 — Filing of Colvin v. Roblox Corp.** In August 2023, plaintiffs filed *Colvin et al. v. Roblox Corporation et al.*, No. 4:23-cv-04146-VC, in the United States District Court for the Northern District of California — a federal class action complaint specifically alleging that Roblox's platform facilitates illegal gambling through Robux-denominated casino games, and that Robux constitutes a "thing of value" for gambling law purposes. The *Colvin* complaint — a publicly filed federal court document accessible through PACER — contained specific, well-pleaded factual allegations that Roblox's platform operated casino-style gambling games accessible to users including minors. The *Colvin* filing placed Amazon on actual notice, through the standard federal court public record, that a federal lawsuit had been accepted by a United States District Court based on allegations that the platform Amazon was hosting on its cloud infrastructure was operating an illegal gambling enterprise. Amazon's legal compliance team — whose professional responsibility includes monitoring active federal litigation involving Amazon's largest enterprise customers — had the access, the professional obligation, and the institutional capability to review the *Colvin* complaint and assess its implications for Roblox's continued compliance with the AWS Customer Agreement's requirement of lawful platform operation. Amazon did not suspend Roblox's AWS services following the *Colvin* filing.[72]

**69. July 23, 2024 — Bloomberg Businessweek "Roblox's Pedophile Problem."** On July 23, 2024, Bloomberg Businessweek published its comprehensive investigative report titled *"Roblox's Pedophile Problem,"* authored by senior reporters Olivia Carville and Cecilia D'Anastasio. The

---

71 Amazon's Technology Coalition Membership — The Technology Coalition, "About Our Members" (listing Amazon among founding member companies committed to combating child sexual exploitation online), available at https://www.technologycoalition.org/. The Technology Coalition operates a child safety data-sharing framework through which member companies receive and analyze child exploitation data from NCMEC, the Internet.

72 Knowledge Timeline Primary Sources — (a) Colvin et al. v. Roblox Corporation et al., No. 4:23-cv-04146-VC (N.D. Cal., filed Aug. 2023; ruling Oct. 31, 2025) (Chhabria, J.), available through PACER; (b) Bloomberg Businessweek, Olivia Carville and Cecilia D'Anastasio, "Roblox's Pedophile Problem" (July 23, 2024); (c) Hindenburg Research, "Roblox: An X-Rated.

Bloomberg investigation documented with specificity the mechanism through which Roblox's "condo" game architecture — hosted on Amazon's S3 and EC2 infrastructure — enables adult predators to identify, contact, and groom minor victims; cited internal Roblox communications confirming that Roblox's management was aware of the predatory contact architecture and had chosen not to implement the corrective measures its own Trust & Safety team had recommended; and identified specific documented cases of child sexual exploitation occurring through Roblox's platform. The Bloomberg investigation was among the most prominently published technology investigative journalism pieces of 2024, receiving immediate follow-on coverage from The New York Times, The Wall Street Journal, the Associated Press, and every major technology media outlet. Amazon's corporate communications, Trust & Safety, and legal compliance teams — all of which professionally monitor major investigative media coverage concerning Amazon's enterprise customers — received actual notice of the Bloomberg investigation's findings through standard professional media monitoring channels on or immediately after July 23, 2024. Amazon did not suspend Roblox's AWS services following the Bloomberg investigation.[73] / [74]

**70. October 8, 2024 — Hindenburg Research Report.** On October 8, 2024, Hindenburg Research published its investigation characterizing the Roblox platform as containing rampant child sexual abuse facilitation, gambling mechanics using Robux as wagering currency, and materially inflated user statistics. The Hindenburg Research report received immediate, extensive coverage in financial media — Bloomberg, Reuters, CNBC, the Financial Times — and triggered significant movement in Roblox's publicly traded stock price. Amazon, as a major institutional player in technology equity markets and as the cloud infrastructure provider whose services are specifically material to Roblox's operational continuity and therefore to Roblox's equity value, had specific financial and institutional incentives to review the Hindenburg Research findings through

73 Amazon's Technology Coalition Membership — The Technology Coalition, "About Our Members" (listing Amazon among founding member companies committed to combating child sexual exploitation online), available at https://www.technologycoalition.org/. The Technology Coalition operates a child safety data-sharing framework through which member companies receive and analyze child exploitation data from NCMEC, the Internet.

74 Knowledge Timeline Primary Sources — (a) Colvin et al. v. Roblox Corporation et al., No. 4:23-cv-04146-VC (N.D. Cal., filed Aug. 2023; ruling Oct. 31, 2025) (Chhabria, J.), available through PACER; (b) Bloomberg Businessweek, Olivia Carville and Cecilia D'Anastasio, "Roblox's Pedophile Problem" (July 23, 2024); (c) Hindenburg Research, "Roblox: An X-Rated.

its standard enterprise customer monitoring processes. The Hindenburg report's specific findings — that Roblox's platform facilitated child sexual exploitation and operated gambling mechanics in violation of applicable law — directly implicated the AWS AUP provisions described in Section IV-C of this Complaint. Amazon did not suspend Roblox's AWS services following the Hindenburg report.[75]

**71. August Through December 2025 — The Attorney General Enforcement Cascade.** Between August and December 2025, four separate state attorneys general — Louisiana (August 2025), Kentucky (October 2025), Texas (November 7, 2025), and Iowa (December 2025) — filed formal civil enforcement actions against Roblox Corporation, each independently finding that Roblox's platform endangers children and violates applicable consumer protection law. The Texas Attorney General's November 7, 2025 filing specifically characterized Roblox as *"a digital playground for predators where the well-being of our kids is sacrificed on the altar of corporate greed"* — language that received national media coverage and that constitutes a formal state government finding of child exploitation whose character directly implicates the AWS AUP's prohibition on content harmful to minors. Each attorney general's complaint is a publicly filed document available through the respective state court's electronic filing system and through the attorney general's public press communications. Amazon's legal compliance team — which professionally monitors state and federal enforcement actions involving Amazon's enterprise customers — received actual notice of each enforcement action through standard legal monitoring channels. Amazon did not suspend Roblox's AWS services following any of the four 2025 attorney general enforcement filings.[76] / [77]

---

75 Knowledge Timeline Primary Sources — (a) Colvin et al. v. Roblox Corporation et al., No. 4:23-cv-04146-VC (N.D. Cal., filed Aug. 2023; ruling Oct. 31, 2025) (Chhabria, J.), available through PACER; (b) Bloomberg Businessweek, Olivia Carville and Cecilia D'Anastasio, "Roblox's Pedophile Problem" (July 23, 2024); (c) Hindenburg Research, "Roblox: An X-Rated.

76 Knowledge Timeline Primary Sources — (a) Colvin et al. v. Roblox Corporation et al., No. 4:23-cv-04146-VC (N.D. Cal., filed Aug. 2023; ruling Oct. 31, 2025) (Chhabria, J.), available through PACER; (b) Bloomberg Businessweek, Olivia Carville and Cecilia D'Anastasio, "Roblox's Pedophile Problem" (July 23, 2024); (c) Hindenburg Research, "Roblox: An X-Rated.

77 State AG Enforcement Actions — (a) Louisiana AG Liz Murrill (Aug. 2025); (b) Kentucky AG Russell Coleman (Oct. 2025); (c) Texas AG Ken Paxton (Nov. 7, 2025): "a digital playground for predators where the well-being of our kids is sacrificed on the altar of corporate greed"; (d) Iowa AG Brenna.

**72. October 31, 2025 — The Colvin Gambling Ruling.** On October 31, 2025, the Honorable Vince Chhabria, United States District Judge for the Northern District of California — the federal district court located in San Jose, California, within the same judicial district as Amazon's Seattle-adjacent legal operations — issued his ruling in *Colvin v. Roblox Corp.*, finding that Robux constitutes "things of value" and that Roblox is "knowingly allowing and profiting from gambling." This ruling — made by a federal Article III court after full briefing, with the benefit of Roblox's complete legal resources — constitutes a binding judicial determination that the platform Amazon hosts on its EC2 and S3 infrastructure operates an illegal gambling enterprise. Following the *Colvin* ruling, Amazon's continued provision of cloud infrastructure to Roblox — without enforcement of the AWS AUP's prohibition on facilitating violations of applicable law — constitutes the hosting of a judicially confirmed illegal gambling operation on Amazon's own servers. Amazon did not suspend Roblox's AWS services following the *Colvin* ruling.[78]

**73. December 12, 2025 — MDL No. 3166 JPML Transfer Order.** On December 12, 2025, the United States Judicial Panel on Multidistrict Litigation issued its Transfer Order consolidating seventy-nine federal civil actions arising from child sexual exploitation facilitated through Roblox's platform into MDL No. 3166. The JPML Transfer Order — a formal federal judicial order available through the JPML's public case management system — constitutes the most comprehensive single public-record confirmation available that Roblox's AWS-hosted platform has facilitated child sexual exploitation at a scale producing seventy-nine separate federal lawsuits. Amazon's legal compliance team, whose professional responsibilities include monitoring all federal proceedings involving Amazon's enterprise customers, received actual notice of the JPML Transfer Order through standard legal monitoring channels on or immediately after December 12, 2025. The Transfer Order's consolidation of seventy-nine child sexual exploitation cases — each arising from exploitation facilitated through Roblox's platform hosted on Amazon's servers — represents the most powerful single evidentiary event in the knowledge timeline establishing

78 Knowledge Timeline Primary Sources — (a) Colvin et al. v. Roblox Corporation et al., No. 4:23-cv-04146-VC (N.D. Cal., filed Aug. 2023; ruling Oct. 31, 2025) (Chhabria, J.), available through PACER; (b) Bloomberg Businessweek, Olivia Carville and Cecilia D'Anastasio, "Roblox's Pedophile Problem" (July 23, 2024); (c) Hindenburg Research, "Roblox: An X-Rated.

Amazon's actual awareness that its AWS infrastructure was being used to host an enterprise-scale child exploitation platform. Amazon did not suspend Roblox's AWS services following the JPML Transfer Order.[79]

**74. February 19, 2026 — Los Angeles County Enforcement Action.** On February 19, 2026, the Los Angeles County District Attorney filed a civil enforcement action against Roblox Corporation, alleging violations of California consumer protection law, COPPA-referenced children's privacy standards, and child safety requirements arising from the same platform design failures documented throughout this Complaint. The Los Angeles County action — filed in California, Amazon's most commercially significant state market — received extensive California media coverage and constituted a formal California government finding of platform violations directly implicating the AWS AUP's child safety provisions. Amazon did not suspend Roblox's AWS services following the Los Angeles County enforcement filing.[80] / [81]

**75. April 2026 — Roblox's $1 Billion Age Verification Disclosure.** In or around April 2026, Roblox Corporation publicly disclosed that implementing genuine age verification would cost approximately one billion dollars annually in foregone revenue — a disclosure reported in Bloomberg, TechCrunch, and the Wall Street Journal, and available to Amazon through standard financial media monitoring. This disclosure constitutes a corporate admission — by Amazon's own AWS customer, made in public investor communications that Amazon's enterprise customer monitoring team would have reviewed — that Roblox has known throughout the relevant period that its registration architecture does not implement genuine age verification; that the revenue generated from under-thirteen users admitted through the false-birthday mechanism amounts to approximately one billion dollars per year; and that Roblox has deliberately maintained its non-

---

79 Knowledge Timeline Primary Sources — (a) Colvin et al. v. Roblox Corporation et al., No. 4:23-cv-04146-VC (N.D. Cal., filed Aug. 2023; ruling Oct. 31, 2025) (Chhabria, J.), available through PACER; (b) Bloomberg Businessweek, Olivia Carville and Cecilia D'Anastasio, "Roblox's Pedophile Problem" (July 23, 2024); (c) Hindenburg Research, "Roblox: An X-Rated.

80 Knowledge Timeline Primary Sources — (a) Colvin et al. v. Roblox Corporation et al., No. 4:23-cv-04146-VC (N.D. Cal., filed Aug. 2023; ruling Oct. 31, 2025) (Chhabria, J.), available through PACER; (b) Bloomberg Businessweek, Olivia Carville and Cecilia D'Anastasio, "Roblox's Pedophile Problem" (July 23, 2024); (c) Hindenburg Research, "Roblox: An X-Rated.

81 State AG Enforcement Actions — (a) Louisiana AG Liz Murrill (Aug. 2025); (b) Kentucky AG Russell Coleman (Oct. 2025); (c) Texas AG Ken Paxton (Nov. 7, 2025): "a digital playground for predators where the well-being of our kids is sacrificed on the altar of corporate greed"; (d) Iowa AG Brenna.

compliant registration architecture for financial reasons. Following this disclosure, Amazon possessed not merely circumstantial evidence but Roblox's own financial admission that the platform Amazon hosts on its servers was deliberately and knowingly operated in a manner that violates the federal children's privacy framework referenced as background in this Complaint. Amazon did not suspend Roblox's AWS services following Roblox's April 2026 disclosure.[82]

**76. May 2026 — Indiana Attorney General Enforcement Action and the Death of Hailey Buzbee.** In May 2026, Indiana Attorney General Todd Rokita filed a civil enforcement action against Roblox Corporation arising in part from the documented death of minor Hailey Buzbee — a child who died as the direct result of a predatory contact initiated through the Roblox platform, using the messaging and Experience-based contact architecture whose existence on Amazon's servers was documented in the Bloomberg investigation, the MDL No. 3166 consolidation, and the six attorney general enforcement actions. The Indiana AG's enforcement action — and specifically its connection to the death of a child facilitated through Roblox's AWS-hosted platform — received national media coverage of the most prominent character. The death of Hailey Buzbee, caused by a predatory contact made possible by the platform that Amazon's servers host and Amazon's networks distribute, represents the most irrefutable possible demonstration of the real-world human consequence of Amazon's deliberate choice to continue providing cloud infrastructure services to Roblox despite documented knowledge of its AUP-violating platform architecture. As of August 11, 2026 — the date of this First Amended Complaint — Amazon continues to provide AWS cloud infrastructure services to Roblox Corporation. Amazon has made no public announcement of any enforcement action, service suspension, or compliance remediation requirement directed at Roblox.[83] / [84]

---

82 Knowledge Timeline Primary Sources — (a) Colvin et al. v. Roblox Corporation et al., No. 4:23-cv-04146-VC (N.D. Cal., filed Aug. 2023; ruling Oct. 31, 2025) (Chhabria, J.), available through PACER; (b) Bloomberg Businessweek, Olivia Carville and Cecilia D'Anastasio, "Roblox's Pedophile Problem" (July 23, 2024); (c) Hindenburg Research, "Roblox: An X-Rated.

83 Knowledge Timeline Primary Sources — (a) Colvin et al. v. Roblox Corporation et al., No. 4:23-cv-04146-VC (N.D. Cal., filed Aug. 2023; ruling Oct. 31, 2025) (Chhabria, J.), available through PACER; (b) Bloomberg Businessweek, Olivia Carville and Cecilia D'Anastasio, "Roblox's Pedophile Problem" (July 23, 2024); (c) Hindenburg Research, "Roblox: An X-Rated.

84 State AG Enforcement Actions — (a) Louisiana AG Liz Murrill (Aug. 2025); (b) Kentucky AG Russell Coleman (Oct. 2025); (c) Texas AG Ken Paxton (Nov. 7, 2025): "a digital playground for predators where the well-being of our kids is sacrificed on the altar of corporate greed"; (d) Iowa AG Brenna.

**77. The Comprehensive Actual Knowledge Assessment.** The timeline established in 67–76 above documents Amazon's actual, specific, and continuously accumulating knowledge of Roblox's AUP violations across every category of the AUP's child safety, gambling, and lawful use prohibitions. Amazon's knowledge of Roblox's child exploitation facilitation is established by its Technology Coalition institutional access to NCMEC CyberTipline data; by the Bloomberg and Hindenburg investigations; by MDL No. 3166's seventy-nine consolidated cases; and by the Indiana AG's enforcement action arising from a child's death. Amazon's knowledge of Roblox's illegal gambling operation is established by the *Colvin* filing in August 2023 and confirmed by the *Colvin* ruling in October 2025. Amazon's knowledge of Roblox's non-compliant data collection practices, referenced as regulatory background, is established by Roblox's own April 2026 $1 billion disclosure and by the six state attorney general enforcement findings. Against this knowledge — accumulated across years, confirmed by federal courts, and corroborated by six independent state law enforcement authorities — Amazon has taken no enforcement action. The combination of documented actual knowledge and sustained non-action is the legal definition of deliberate, conscious, and financially motivated non-enforcement.

## H. THE $385 MILLION ANNUAL REVENUE MOTIVE — THE FINANCIAL ARCHITECTURE OF AMAZON'S DELIBERATE NON-ENFORCEMENT

**78.** The most direct and most financially documented answer to the question of why Amazon continues to host Roblox's platform despite possessing actual knowledge of its systematic AUP violations is a number: approximately **$385,000,000** — Amazon's estimated annual cloud computing service revenues from Roblox Corporation. This Section presents the detailed financial analysis underlying that estimate and establishes the commercial significance of the Roblox-Amazon revenue relationship that constitutes the financial motive for Amazon's deliberate non-enforcement.[85]

**79. Roblox's Total Platform Revenue — The Financial Baseline.** Non-party Roblox Corporation's SEC-filed annual reports establish the following total revenue figures for the fiscal

85 Roblox Forms 10-K FY2020-FY2024, SEC EDGAR, AWS Pricing Calculator, cloud infrastructure cost benchmarks, and Amazon Form 10-K FY2024 AWS segment revenues and operating income.

years most relevant to this action: FY2022: $2.23 billion; FY2023: $2.65 billion; FY2024: $3.60 billion. These revenues are generated through the operation of the Roblox platform — specifically through Robux virtual currency sales, Roblox Premium subscription fees, and Immersive Ads platform revenues. Each of these revenue streams depends entirely on the continued operation of the Roblox platform's technical infrastructure — the EC2 compute, S3 storage, RDS and DynamoDB databases, and CloudFront CDN that constitute the AWS services described in Section IV-B of this Complaint. Without AWS, Roblox has no platform. Without a platform, Roblox has no revenue. The totality of Roblox's revenue is therefore downstream of Amazon's infrastructure provision — making Amazon's hosting relationship the foundational commercial dependency underlying every dollar of Roblox's multi-billion-dollar annual revenue.[86]

**80. Amazon's Cloud Infrastructure Revenue from Roblox — The Calculation.** Amazon does not separately disclose its revenues from individual AWS enterprise customers, and the specific financial terms of the AWS-Roblox commercial relationship are confidential as a matter of standard enterprise cloud services contracting practice. However, the following financial analysis — grounded in Roblox's own SEC disclosures, in industry-standard cloud infrastructure cost benchmarks for platforms of Roblox's scale, and in Amazon's published AWS pricing architecture — yields a well-founded estimate of Amazon's annual revenue from Roblox's AWS usage:

**(a) Infrastructure Cost as Percentage of Revenue**: Industry-standard cloud infrastructure cost analysis for large-scale online gaming and social platforms — based on published academic and industry research, AWS's own cost calculator tools, and comparable platforms' disclosed infrastructure cost ratios — establishes that cloud infrastructure costs for a platform operating at Roblox's scale (151.5 million daily active users; 39.6 billion engagement hours per quarter; 40 million hosted Experiences) typically represent approximately **10% to 12%** of total platform revenue. This range reflects the substantial compute, storage, database, and CDN costs associated with supporting a platform of Roblox's specific technical architecture and user volume.

86 Roblox Forms 10-K FY2020-FY2024, SEC EDGAR, AWS Pricing Calculator, cloud infrastructure cost benchmarks, and Amazon Form 10-K FY2024 AWS segment revenues and operating income.

**(b) Application to Roblox's Revenue**: Applying the 10–12% infrastructure cost ratio to Roblox's reported annual revenues: FY2022 ($2.23B × 11% = ~**$245M**); FY2023 ($2.65B × 11% = ~**$291M**); FY2024 ($3.60B × 11% = ~**$396M**). The estimated annual AWS revenue from Roblox as of fiscal year 2024 is approximately **$385–$400 million**, consistent with the $385 million figure used throughout this Complaint and reflecting both the revenue trajectory and the conservative end of the infrastructure cost percentage range.

**(c) Cumulative Revenue Since 2020**: Applying comparable infrastructure cost ratios to Roblox's reported revenues for fiscal years 2020 ($923M) through 2024 ($3.60B) yields a cumulative estimated AWS revenue from Roblox of approximately **$1.4–$1.6 billion** over the five-year period preceding the filing of this First Amended Complaint.[87]

**81. The Roblox AWS Account — A Major Enterprise Customer Relationship.** The estimated $385 million annual revenue figure represents Roblox as one of the most commercially significant enterprise customer relationships in Amazon's AWS customer portfolio. For context: AWS's global revenues of approximately $107 billion annually are divided across hundreds of thousands of enterprise customers, with the vast majority of customers generating far less than $385 million per year in AWS billings. An AWS customer generating $385 million annually in cloud service billings represents not merely a significant revenue relationship but a **strategic enterprise account** — the category of AWS customer for whom Amazon assigns dedicated account management teams, provides customized service level agreements, offers negotiated pricing structures, and maintains senior executive-level commercial relationships. In practical terms, the decision whether to suspend Roblox's AWS services — a decision that would terminate a $385 million per year strategic enterprise account — is not a decision made by Amazon's front-line Trust & Safety team acting on an AUP violation report. It is a decision that would involve Amazon's most senior commercial leadership, including executives with direct revenue accountability for AWS's enterprise customer portfolio. Amazon's non-enforcement of its AUP against Roblox is therefore not a bureaucratic oversight — it is a commercially informed, senior-

87 Roblox Forms 10-K FY2020-FY2024, SEC EDGAR, AWS Pricing Calculator, cloud infrastructure cost benchmarks, and Amazon Form 10-K FY2024 AWS segment revenues and operating income.

executive-reviewed, and deliberately maintained strategic decision to prioritize $385 million in annual enterprise revenue over the child safety enforcement obligations that Amazon's own AUP commits it to perform.[88]

**82. The Financial Motive as Evidence of Deliberateness Under HRS § 480-2.** The $385 million annual revenue figure does not merely explain why Amazon chose not to enforce its AUP against Roblox. It legally characterizes that choice as deliberate, commercially motivated, and actionable under Hawaii Revised Statutes § 480-2. Under Hawaii's consumer protection framework, an unfair business practice includes conduct that is substantially injurious to consumers, not outweighed by countervailing benefits, and not reasonably avoidable by consumers. *Cieri v. Leticia Query Realty*, 80 Haw. 54, 66, 905 P.2d 29, 41 (1995). A corporation that: publishes an AUP prohibiting hosting of content sexually exploiting minors; markets that AUP to enterprise customers and the public as a binding standard for lawful AWS use; possesses actual, documented knowledge that its largest-revenue-class enterprise customers are using its services in violation of the AUP in ways that have contributed to child exploitation, illegal gambling, and the documented death of a minor; collects $385 million annually from that customer despite those violations; and takes no enforcement action — has made a deliberate choice whose financial motive is as transparent as it is legally indefensible. That choice is the subject of this action.

## I. AMAZON'S DELIBERATE NON-ENFORCEMENT PATTERN — THE PARLER PRECEDENT AND THE RECORD OF SELECTIVE ENFORCEMENT

**83.** Amazon's non-enforcement of its Acceptable Use Policy against Roblox Corporation is not the product of Amazon's inability to enforce its AUP or of Amazon's practice of never suspending enterprise customer services for AUP violations. The public record of Amazon's AWS enforcement history — specifically the documented instances in which Amazon has swiftly suspended AWS services to customers for AUP violations — establishes that Amazon's AUP enforcement mechanism is operationally functional, commercially exercised, and strategically

88 Roblox Forms 10-K FY2020-FY2024, SEC EDGAR, AWS Pricing Calculator, cloud infrastructure cost benchmarks, and Amazon Form 10-K FY2024 AWS segment revenues and operating income.

deployed based on factors that include the commercial significance of the customer relationship, the public and political salience of the violation, and the reputational risk that continued hosting represents to Amazon's business. Amazon's choice not to enforce against Roblox — maintained continuously through the knowledge timeline documented in Section IV-G — is therefore a deliberate, affirmative, commercially-motivated choice, not a passive or inadvertent failure of enforcement capability.[89]

**84. The Parler Suspension — Amazon's Demonstrated Willingness to Act Swiftly.** On January 9, 2021 — approximately forty-eight hours after the January 6, 2021 United States Capitol attack — Amazon Web Services suspended its hosting services to Parler, Inc., a social networking platform, citing Parler's failure to remove user-posted content that Amazon's Trust & Safety team identified as inciting violence. Amazon's suspension of Parler's AWS services — implemented within two days of Amazon's identification of the violation, without court order, without regulatory mandate, and without prior judicial determination that Parler's content violated any specific law — demonstrates unambiguously that Amazon possesses the operational capacity to investigate AUP violations by enterprise customers and to suspend services within days when Amazon determines that the violation warrants that remedy. The Parler suspension was completed swiftly, decisively, and without hesitation — notwithstanding Parler's commercial status as an AWS enterprise customer and notwithstanding the absence of any prior court ruling confirming that Parler's content violated applicable law. Amazon acted on its own assessment of AUP violation and terminated services.[90]

**85. The Roblox Non-Suspension — The Contrast That Defines Amazon's Deliberateness.** Against the Parler precedent — a forty-eight-hour suspension decision made without judicial confirmation, without regulatory mandate, and based on Amazon's internal Trust & Safety assessment — Amazon's treatment of Roblox is stark and legally significant. Amazon has

89 AWS enforcement history sources: Parler suspension AWS letter dated Jan. 9, 2021; Washington Post, Reuters, and Associated Press reporting; AWS Abuse reporting/program description; and AWS Trust & Safety/transparency enforcement disclosures.

90 AWS enforcement history sources: Parler suspension AWS letter dated Jan. 9, 2021; Washington Post, Reuters, and Associated Press reporting; AWS Abuse reporting/program description; and AWS Trust & Safety/transparency enforcement disclosures.

possessed documented, escalating evidence of Roblox's AUP violations since at least 2018 through its Technology Coalition membership. Amazon has possessed specific, public, federal-court-filed notice of Roblox's gambling violations since August 2023 through the *Colvin* complaint. Amazon has possessed a binding federal court ruling confirming Roblox's gambling violations since October 31, 2025. Amazon has possessed six independent state attorney general enforcement findings since August 2025. Amazon has possessed a federal JPML Transfer Order consolidating seventy-nine child exploitation cases since December 12, 2025. And Amazon has received public notice of a child's death facilitated through Roblox's AWS-hosted platform since May 2026. Through all of this — representing a factual record that is orders of magnitude more documented, more officially confirmed, and more legally unambiguous than the social media content that Amazon assessed and acted upon within forty-eight hours in the Parler case — Amazon has taken no enforcement action against Roblox. The contrast between Amazon's forty-eight-hour Parler response and its multi-year Roblox non-response is not explained by any difference in the severity or documentation of the violations. It is explained by one variable: the financial value of the enterprise customer relationship at stake. Parler generated negligible AWS revenues compared to Roblox's estimated $385 million annually. The commercial cost of the Parler suspension was negligible. The commercial cost of a Roblox suspension would be $385 million per year. That difference — and only that difference — explains Amazon's differential treatment of the two violations.[91]

**86. Additional AWS Enforcement Precedents.** Beyond the Parler suspension, Amazon's public AWS enforcement record documents the following categories of AUP enforcement actions that further establish Amazon's enforcement capability and the deliberateness of its non-enforcement against Roblox: (a) Amazon has terminated AWS hosting services to operators of darknet marketplaces hosting illegal content, typically within days of Amazon's identification of the violation through either internal monitoring or law enforcement referral; (b) Amazon has suspended AWS services to cybersecurity threat actors and state-sponsored hacking groups

91 AWS enforcement history sources: Parler suspension AWS letter dated Jan. 9, 2021; Washington Post, Reuters, and Associated Press reporting; AWS Abuse reporting/program description; and AWS Trust & Safety/transparency enforcement disclosures.

identified as using AWS infrastructure for malicious activities, acting swiftly upon determination of violation; and (c) Amazon has suspended AWS services to distributed denial-of-service attack operators identified as weaponizing AWS computing resources against third parties. In each category of enforcement, Amazon demonstrated the operational capability to identify AUP violations, make suspension determinations, and implement service terminations — the same capabilities that Amazon has elected not to deploy against Roblox's documented, judicially confirmed, and attorney-general-established AUP violations for a period now exceeding four years from the initial public notice events and nearly two years from the *Colvin* federal court ruling.[92]

**87. The AWS Abuse Reporting Mechanism — Amazon's Voluntary Commitment and Its Non-Application to Roblox.** Amazon publicly markets and maintains an abuse reporting channel — accessible at abuse@amazonaws.com and through the AWS Abuse Report form on Amazon's public website — through which any person or organization can report suspected AUP violations by AWS customers. Amazon commits, through its published descriptions of the AWS Abuse program, to investigate reports received through this channel and to take appropriate enforcement action against confirmed AUP violators. The six state attorney general offices that filed enforcement actions against Roblox between August and December 2025 — and the Los Angeles County District Attorney who filed in February 2026 — are law enforcement authorities with specific, documented, and officially investigated evidence of Roblox's AUP violations. Each of these enforcement authorities had both the knowledge and the standing to submit formal AUP violation reports to Amazon's abuse reporting channel, directing Amazon's Trust & Safety team to the specific evidence underlying each enforcement action. Whether or not such formal reports were submitted through the abuse@amazonaws.com channel, the public filing of six state enforcement actions — each alleging specific AUP-violating uses of Roblox's AWS infrastructure — constitutes constructive notice through the most authoritative possible channel: the formal, documented, judicially submitted findings of law enforcement authorities with investigative power and prosecutorial standing. Amazon's failure to investigate and act on this constructive notice — or

92 AWS enforcement history sources: Parler suspension AWS letter dated Jan. 9, 2021; Washington Post, Reuters, and Associated Press reporting; AWS Abuse reporting/program description; and AWS Trust & Safety/transparency enforcement disclosures.

its investigation and deliberate non-action — constitutes the AUP enforcement failure at the center of this action.[93] / [94]

## J. PLAINTIFF'S SPECIFIC INDIVIDUAL INJURIES — THEODORE HAUGLAND'S HARM IN HALAWA HEIGHTS, HAWAII

**88.** Plaintiff Theodore Haugland brings this action exclusively in his individual capacity. This Section documents the specific, ascertainable, individually suffered injuries that Plaintiff experienced in Hawaii as a direct and proximate result of Amazon's deliberate, financially-motivated decision to continue providing cloud infrastructure services to Roblox Corporation in violation of Amazon's own Acceptable Use Policy. These injuries are not hypothetical, speculative, or generalized — they are specific harms suffered by a named individual at a specific address in Hawaii, arising from specific transactions and exposures that Roblox's AWS-hosted platform generated and that Amazon's AUP-violating non-enforcement of its own standards enabled and sustained.

**89. Financial Injury — Robux Purchases on an AWS-Hosted Platform.** Plaintiff Theodore Haugland, residing at 99-009 Kalaloa St., Suite D2016, Halawa Heights, Hawaii, purchased Robux virtual currency on behalf of his minor children during the period relevant to this First Amended Complaint. Each Robux purchase was a monetary transaction — a specific expenditure of real United States dollars — made on and through the Roblox platform whose operation is hosted in its entirety on Amazon Web Services infrastructure. Plaintiff's financial injuries are thus directly linked to Amazon's hosting relationship in the following specific ways: (a) without Amazon's AWS infrastructure, the Roblox platform on which Plaintiff transacted could not operate at the scale, reliability, or geographic reach that made it accessible to Plaintiff and his minor children in Hawaii; (b) Plaintiff's Robux purchases were made in reliance on Roblox's representations — distributed through a platform whose operation Amazon's servers enable — that the platform was

93 AWS enforcement history sources: Parler suspension AWS letter dated Jan. 9, 2021; Washington Post, Reuters, and Associated Press reporting; AWS Abuse reporting/program description; and AWS Trust & Safety/transparency enforcement disclosures.

94 AWS Enforcement History — (a) Parler suspension: Amazon Web Services, Inc., Letter to Parler, Inc. (Jan. 9, 2021), describing the basis for AWS service suspension arising from Parler's failure to remove content inciting violence in connection with the January 6, 2021 Capitol attack; reported by multiple national media outlets including.

safe, legally compliant, and operated in conformity with its published Terms of Use, Privacy Policy, and Community Standards; (c) those representations were false, and their falsity was known to Amazon through the documented knowledge timeline in Section IV-G; and (d) the false representations were therefore broadcast through Amazon's cloud infrastructure — stored on Amazon's S3 servers, served through Amazon's CloudFront CDN, and rendered on the Roblox platform interface that Amazon's EC2 compute infrastructure powered — to Plaintiff in Hawaii. The specific amounts of Plaintiff's Robux purchases will be established through discovery directed to both Roblox Corporation and Amazon, whose AWS transaction processing infrastructure maintains records of the platform-level transactions that constitute Plaintiff's documented financial loss.[95]

**90. Privacy Injury — Plaintiff's Minor Children's Data Stored on Amazon's Servers.** Plaintiff's minor children used the Roblox platform on devices located at Plaintiff's Halawa Heights residence. Through that usage, the Roblox platform — operating on Amazon's AWS infrastructure — collected, processed, and stored the following categories of personal information from Plaintiff's minor children, without the legally adequate parental consent required by the federal children's privacy framework referenced as background in this Complaint: (a) account registration information, including the birth dates submitted at registration; (b) device identifier data, including the Identifier for Advertisers (IDFA) from iOS devices and the Google Advertising ID (GAID) from Android devices; (c) geolocation data derived from IP addresses associated with devices used in Halawa Heights, Hawaii; (d) behavioral engagement data, including complete session-by-session records of which Experiences Plaintiff's children accessed, how long they engaged, what Robux purchases they made, and what social interactions they participated in; and (e) communications content from in-platform messaging and Experience-based social interactions. Each category of data was collected through the Roblox platform interface, stored in Amazon's RDS and DynamoDB database infrastructure, and processed using Amazon's EC2 computing resources. Amazon's servers hold Plaintiff's minor children's personal data. Amazon's databases are

---

95 Plaintiff's Robux purchase records (to be established through discovery); Roblox Privacy Policy § 4; NCMEC CyberTipline 2022 reports; Colvin gambling ruling; Indiana AG enforcement/Hailey Buzbee; Roblox Terms § 2; Roblox April 2026 disclosure; HRS § 480-13(b); Courbat.

the specific storage medium in which that data — collected in the manner documented throughout this Complaint — resides. Amazon's continued hosting of Plaintiff's children's personal data, collected in violation of the federal children's privacy framework referenced as background, constitutes a specific, cognizable privacy harm directly traceable to Amazon's AUP-violating hosting decision.[96]

**91. Safety Injury — Exposure to AWS-Enabled Platform Harms.** Plaintiff's minor children, using the Roblox platform at their Halawa Heights residence, were exposed — through the Roblox platform whose harmful features are made operationally possible by Amazon's cloud computing infrastructure — to the following specific categories of harm documented throughout this Complaint: (a) the predatory contact architecture of the "condo" game ecosystem, whose Experience files are stored on Amazon's S3 servers, whose game logic runs on Amazon's EC2 instances, and whose user communications pass through Amazon's networking infrastructure; (b) the casino-style gambling Experiences whose operation on Amazon's EC2 servers constitutes illegal gambling under Hawaii Revised Statutes §§ 712-1220 and 712-1222, as confirmed by the *Colvin* ruling; and (c) the dark-pattern Robux monetization architecture — stored and processed on Amazon's cloud infrastructure — whose bundle pricing system and real-dollar concealment mechanisms are specifically documented as exploiting children's developmental cognitive vulnerabilities. Each of these harmful features exists, operates, and reaches child users in Hawaii through Amazon's cloud infrastructure. Amazon's hosting of these features, in violation of its AUP, is the specific enabling condition without which these harms could not reach Plaintiff's children at their Halawa Heights address. Plaintiff's exposure of his minor children to these harms — made possible by Amazon's AUP-violating infrastructure provision — constitutes a specific, cognizable safety injury directly attributable to Amazon's deliberate non-enforcement.[97]

---

96 Plaintiff's Robux purchase records (to be established through discovery); Roblox Privacy Policy § 4; NCMEC CyberTipline 2022 reports; Colvin gambling ruling; Indiana AG enforcement/Hailey Buzbee; Roblox Terms § 2; Roblox April 2026 disclosure; HRS § 480-13(b); Courbat.

97 Plaintiff's Robux purchase records (to be established through discovery); Roblox Privacy Policy § 4; NCMEC CyberTipline 2022 reports; Colvin gambling ruling; Indiana AG enforcement/Hailey Buzbee; Roblox Terms § 2; Roblox April 2026 disclosure; HRS § 480-13(b); Courbat.

**92. Parental Autonomy Injury — Amazon's Infrastructure Scales the Circumvention of Plaintiff's Authority.** Plaintiff's minor children accessed the Roblox platform — including its inadequately moderated content, its gambling mechanics, and its data collection architecture — through the false-birthday registration mechanism that Roblox's Terms of Use represent as prohibited but whose continued operation on Amazon's registration processing servers is part of the AUP-violating infrastructure Amazon hosts. The false-birthday mechanism is not a design flaw that exists despite Amazon's infrastructure — it is a specific database-level registration architecture, processing and storing false age data on Amazon's RDS servers, that Amazon's hosting relationship operationalizes at the scale of tens of millions of users. The circumvention of Plaintiff's parental authority — his right to make an informed, accurate-information-based decision about his minor children's digital access — is thus not merely Roblox's wrong. It is a wrong that Amazon's cloud infrastructure enables at global scale, stores in Amazon's databases, and serves through Amazon's networks. Plaintiff's injury — the deprivation of his parental decision-making authority through a platform architecture implemented on Amazon's servers — is a specific, cognizable harm arising from Amazon's specific, knowing, and financially motivated AUP non-enforcement.[98]

**93. Standing Under Hawaii Revised Statutes § 480-13(b).** Plaintiff's individual injuries described in 89–92 constitute the "ascertainable loss of money or property" required for standing as a consumer under HRS § 480-13(b). *Courbat v. Dahana Ranch, Inc.*, 111 Haw. 254, 262, 141 P.3d 427, 435 (2006). Plaintiff's financial injury — the specific Robux purchases made on Amazon's hosted platform in reliance on false safety and compliance representations that Amazon's infrastructure delivered to Plaintiff in Hawaii — is the paradigmatic ascertainable monetary loss cognizable under § 480-13(b). Plaintiff's privacy and safety injuries constitute cognizable property interests in the personal information of his minor children that was processed without adequate authorization on Amazon's servers, and in the safety of his children's digital environment that Amazon's AUP-violating hosting relationship degraded. Each category of injury

98 Plaintiff's Robux purchase records (to be established through discovery); Roblox Privacy Policy § 4; NCMEC CyberTipline 2022 reports; Colvin gambling ruling; Indiana AG enforcement/Hailey Buzbee; Roblox Terms § 2; Roblox April 2026 disclosure; HRS § 480-13(b); Courbat.

is specific, traceable to Amazon's specific conduct, and redressable through the specific relief sought in Section VI of this First Amended Complaint. All preceding paragraphs 1 through 93 are hereby re-alleged and incorporated by reference into each Count set forth in Section V as though fully stated therein.[99] / [100]

## SECTION V — CAUSES OF ACTION

*All preceding paragraphs of this First Amended Complaint — 1 through 93 — are hereby re-alleged and incorporated by reference into each Count set forth below as though fully stated herein.*

### COUNT I

VIOLATION OF HAWAII REVISED STATUTES § 480-2

UNFAIR AND DECEPTIVE ACTS AND PRACTICES IN TRADE OR COMMERCE

*(Individual Claim — Plaintiff Theodore Haugland)*

**94.** Hawaii Revised Statutes § 480-2(a) provides that "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful." Hawaii courts construe § 480-2 broadly to effectuate its remedial purpose of protecting consumers from deceptive conduct. *Hawaii Med. Ass'n v. Hawaii Med. Serv. Ass'n*, 113 Haw. 77, 94, 148 P.3d 1179, 1196 (2006). An act is "deceptive" if it has the tendency or capacity to mislead a reasonable consumer. *Davis v. Wholesale Motors, Inc.*, 86 Haw. 405, 417, 949 P.2d 1026, 1037 (Ct. App. 1997). An act is "unfair" if it offends established public policy and is substantially injurious to consumers. *Cieri v. Leticia Query Realty*, 80 Haw. 54, 66, 905 P.2d 29, 41 (1995). Hawaii Revised Statutes § 480-13(b)(1) provides that any consumer injured by a § 480-2 violation shall recover the greater of three times actual damages or $1,000 in statutory minimum damages. Section 480-13(b)(2) mandates attorneys' fees to any prevailing consumer plaintiff.

---

99 Plaintiff's Robux purchase records (to be established through discovery); Roblox Privacy Policy § 4; NCMEC CyberTipline 2022 reports; Colvin gambling ruling; Indiana AG enforcement/Hailey Buzbee; Roblox Terms § 2; Roblox April 2026 disclosure; HRS § 480-13(b); Courbat.

100 Plaintiff's Individual Injuries — Evidentiary Foundation — (a) Financial injury: Plaintiff's Robux purchase records, to be established through discovery directed to Amazon (AWS transaction processing records) and Roblox Corporation (platform-level purchase records); (b) Privacy injury: personal data collected through Roblox's AWS-hosted platform stored in Amazon RDS and DynamoDB database infrastructure.

**95. Deceptive Acts and Practices by Amazon.** Amazon committed the following specific unfair and deceptive acts and practices in the conduct of its cloud computing trade and commerce, each of which has the tendency or capacity to mislead a reasonable consumer in Plaintiff's position:

**(a) AWS Acceptable Use Policy Misrepresentation**: Amazon published, markets, and represents its Acceptable Use Policy as a binding governing standard for the lawful use of AWS services — specifically representing that Amazon prohibits its cloud infrastructure from being used to store or transmit content that sexually exploits minors, to facilitate violations of applicable law, and to operate in any manner harmful to minors. These AUP representations are materially false as applied to Amazon's hosting of non-party Roblox Corporation's platform — a platform that Amazon continues to host despite documented, judicially confirmed AUP violations that include the storage and transmission of content sexually exploiting minors (24,522 NCMEC CyberTipline reports in 2022), the facilitation of illegal gambling (*Colvin v. Roblox Corp.*, Oct. 31, 2025), and operation in a manner harmful to minors (Indiana AG enforcement, May 2026; death of Hailey Buzbee). Amazon's representation that its AUP is enforced is materially false; its continued hosting of AUP-violating content is the operational reality.

**(b) AWS Compliance and Security Marketing Misrepresentation**: Amazon markets AWS as the cloud platform meeting the highest standards of compliance, security, and legal conformity — representing through its compliance certifications portfolio and "responsible cloud" marketing that AWS-hosted platforms operate within a legally and ethically governed infrastructure environment. These representations are materially false as applied to Amazon's hosting of Roblox's data infrastructure, which processes personal information of children collected without legally adequate parental consent, as established by the federal children's privacy regulatory framework referenced as background throughout this Complaint, by the six state attorney general enforcement findings, and by Roblox's own April 2026 $1 billion disclosure.

**(c) AWS Abuse Program Misrepresentation**: Amazon represents through its publicly marketed AWS Abuse program that AUP violations reported to Amazon will be investigated and that appropriate enforcement action will be taken against confirmed violators. This representation is

materially false as applied to the documented, law-enforcement-confirmed, and judicially adjudicated AUP violations committed by Roblox Corporation through its use of Amazon's infrastructure — violations that have been formally identified by six state attorneys general and confirmed by a federal district court, yet against which Amazon has taken no enforcement action.

**96. Unfair Acts and Practices by Amazon.** Amazon's conduct independently constitutes "unfair" practices under § 480-2 applying the FTC's three-part unfairness test adopted by Hawaii courts in *Cieri*: (a) Amazon's AUP non-enforcement causes substantial injury to Plaintiff — specifically the financial loss from Roblox transactions on Amazon's hosted platform, the privacy injury from Plaintiff's children's data stored on Amazon's servers, and the safety injury from exposure to the platform conditions Amazon's infrastructure enables; (b) these injuries are not reasonably avoidable by Plaintiff, who has no independent mechanism to assess whether Amazon has enforced its AUP against specific enterprise customers or whether the cloud infrastructure supporting his transactions complies with its own governing standards; and (c) the injuries are not outweighed by countervailing consumer benefits — Amazon's $385 million annual Roblox hosting revenue flows to Amazon's shareholders, not to consumers or to children harmed by the platform Amazon hosts.

**97. Causation and Individual Damages.** Amazon's unfair and deceptive acts directly and proximately caused Plaintiff's individual injuries documented in Section IV-J: the monetary loss from Robux purchases, the privacy harm from his minor children's data processed on Amazon's servers, and the safety harm from the platform conditions Amazon's infrastructure makes operationally possible. Plaintiff seeks mandatory treble damages under HRS § 480-13(b)(1), mandatory attorneys' fees under § 480-13(b)(2), injunctive relief under § 480-13(a), and all other individual relief set forth in Section VI.

**COUNT II**

VIOLATION OF HAWAII REVISED STATUTES §§ 481A-3 AND 481A-4

UNIFORM DECEPTIVE TRADE PRACTICES ACT

*(Individual Claim — Plaintiff Theodore Haugland)*

**98.** Hawaii Revised Statutes § 481A-3 prohibits enumerated deceptive trade practices. Amazon violated the following specific provisions: **(b)(5)** — representing that services have characteristics, uses, benefits, or qualities they do not have, by representing AWS as a child-safe, AUP-enforced, compliance-governed cloud platform while hosting Roblox's AUP-violating platform without enforcement; **(b)(7)** — representing that services are of a particular standard, quality, or grade when they are of another, by marketing AWS's compliance certifications and responsible cloud standards as applicable to all hosted platforms while exempting Roblox's demonstrably non-compliant platform from those standards; **(b)(9)** — advertising services with intent not to provide them as advertised, by marketing the AUP as a binding enforcement mechanism while deliberately declining to enforce it against Roblox for financial reasons; and **(b)(12)** — engaging in conduct creating a likelihood of confusion or misunderstanding, by maintaining the public representation that AWS services are governed by a child-protective AUP while operating a cloud infrastructure whose largest gaming platform customer operates in documented categorical violation of that AUP.

**99.** Hawaii Revised Statutes § 481A-4 provides injunctive relief for any person likely to be damaged by a deceptive trade practice. Plaintiff, who continues to access the Roblox platform through AWS-hosted infrastructure and whose minor children's personal data continues to be processed on Amazon's servers in the manner documented throughout this Complaint, is likely to suffer continued damage absent the injunctive relief this action seeks. Plaintiff seeks a permanent injunction under § 481A-4 compelling Amazon to enforce its AUP against Roblox's AWS usage, to suspend or conditionally reinstate AWS services pending verified compliance, and to implement the specific compliance monitoring mechanisms identified in Section VI.

## COUNT III

NEGLIGENCE AND NEGLIGENT ENABLEMENT OF CHILD EXPLOITATION THROUGH CLOUD INFRASTRUCTURE SERVICES

*(Individual Claim — Plaintiff Theodore Haugland)*

**100.** Under *Blair v. Ing*, 95 Haw. 247, 253, 21 P.3d 452, 458 (2001), the existence and scope of a duty of care in Hawaii is determined by weighing foreseeability of harm against policy

considerations, including: foreseeability; certainty of injury; closeness of causal connection; moral blame; policy of preventing future harm; burden on defendant; and availability of insurance. Each factor weighs in favor of imposing a duty of reasonable care on Amazon with respect to its cloud infrastructure hosting of child-directed platforms.

**101. Duty.** Amazon owed Plaintiff and his minor children a duty of reasonable care arising from three independent sources. First, **voluntary undertaking**: Amazon voluntarily published the AUP, voluntarily undertook to enforce it against customers operating harmful or illegal content, and voluntarily marketed that enforcement function to enterprise customers and the public. Having undertaken these functions and collected $385 million annually in reliance on the enterprise trust the AUP generates, Amazon assumed a duty of reasonable care in performing them. *Restatement (Second) of Torts* § 323 (adopted in Hawaii). Second, **foreseeability**: the harm Plaintiff and his minor children suffered from Amazon's failure to enforce its AUP against Roblox is not merely foreseeable in the abstract — it was specifically foreseen, documented, and reported to Amazon through its Technology Coalition membership, the *Colvin* litigation, and six attorney general enforcement actions, establishing the most concrete possible foreseeability of precisely the harm that occurred. Third, **special relationship**: Amazon's status as the exclusive cloud infrastructure provider on whom Roblox's entire platform depends, combined with Amazon's contractual authority to require AUP compliance as a condition of continued service, creates a special relationship with the end-users of Roblox's AWS-hosted platform — including Plaintiff and his minor children — that gives rise to an enhanced duty of care proportionate to Amazon's unique ability to prevent the harm.

**102. Breach.** Amazon breached its duty of reasonable care through the following specific, individually identified failures: (a) failing to enforce AUP prohibition on storage and transmission of content sexually exploiting minors against Roblox's AWS-hosted "condo" game architecture despite documented NCMEC CyberTipline escalation establishing 24,522 annual reports; (b) failing to enforce AUP prohibition on facilitating violations of applicable law against Roblox's casino gambling Experiences confirmed illegal by *Colvin*; (c) failing to enforce AUP prohibition on harmful-to-minors conduct against a platform whose AWS-hosted architecture the Indiana AG's

enforcement action links to a child's death; (d) failing to exercise the Customer Agreement's express suspension authority despite possessing actual knowledge established through the Section IV-G timeline; and (e) continuing to receive $385 million annually from Roblox's AUP-violating AWS usage while representing to consumers and the public that AUP enforcement makes AWS a lawful and responsible cloud computing platform.

**103. Causation and Damages.** Each breach identified in 102 was the direct and proximate cause of Plaintiff's individual injuries: but for Amazon's failure to enforce its AUP against Roblox, the platform generating Plaintiff's financial losses and his minor children's privacy and safety harms could not operate at the scale making those harms possible. Plaintiff seeks individual compensatory damages, injunctive relief, attorneys' fees, and all other relief set forth in Section VI.

**COUNT IV**

BREACH OF CONTRACT — THIRD-PARTY BENEFICIARY

*(Individual Claim — Plaintiff Theodore Haugland)*

**104.** Under *Pancakes of Hawaii, Inc. v. Pomare Properties Corp.*, 85 Haw. 300, 309, 944 P.2d 97, 106 (1997), and *Restatement (Second) of Contracts* § 302 (adopted as Hawaii's governing standard), a third party may enforce a contract when recognition of the right to performance is appropriate to effectuate the parties' intention and the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

**105. Third-Party Beneficiary Status.** The AWS Customer Agreement between Amazon and non-party Roblox Corporation — specifically the AUP's child safety provisions prohibiting storage and transmission of content sexually exploiting minors, harmful-to-minors conduct, and facilitation of applicable law violations — are provisions made necessarily and expressly for the protection of the end-users of platforms hosted on Amazon's cloud infrastructure. Plaintiff Theodore Haugland and his minor children — as users of the Roblox platform whose personal data is stored on Amazon's servers, whose transactions are processed through Amazon's EC2 infrastructure, and whose safety is directly implicated by the AUP's child protection provisions — are intended third-party beneficiaries of the AWS Customer Agreement's child safety and lawful-use provisions. The

entire purpose of the AUP's prohibition on harmful-to-minors content and child exploitation is the protection of the minor users of hosted platforms — the precise class of persons that includes Plaintiff's minor children. Under *Pancakes of Hawaii*, recognition of Plaintiff's third-party beneficiary rights is both appropriate and necessary to effectuate the intent of those provisions.

**106. Amazon's Breach.** Amazon materially breached its third-party beneficiary obligations by: (a) failing to enforce the AUP's prohibition on storage and transmission of content sexually exploiting minors against Roblox's AWS-hosted "condo" game architecture; (b) failing to enforce the AUP's prohibition on facilitation of applicable law violations against Roblox's gambling Experiences confirmed by *Colvin*; (c) failing to enforce the AUP's harmful-to-minors prohibition against a platform that generated 24,522 NCMEC CyberTipline reports in a single year and that the Indiana AG links to a child's death; (d) failing to exercise the Customer Agreement's Section 7 suspension authority upon discovery of Roblox's sustained AUP violations; and (e) failing to require Roblox to demonstrate compliance with its Customer Agreement warranty of lawful platform operation as a condition of continued AWS service provision. Each of these failures deprived Plaintiff of the benefit — specifically, cloud infrastructure governed by AUP child safety standards whose enforcement would have required remediation of the specific platform conditions that harmed Plaintiff — that the AUP's child safety provisions were created to provide.

**107. Damages.** Plaintiff suffered benefit-of-the-bargain damages — the difference between the cloud-infrastructure-enabled platform services as governed by the Customer Agreement's child safety provisions if enforced, and the platform services as actually delivered through Amazon's AUP-unenforced infrastructure — together with all consequential damages foreseeable at the time Amazon contracted with Roblox, including the specific individual harms documented in Section IV-J.

**COUNT V**

UNJUST ENRICHMENT AND RESTITUTION

*(Individual Claim — Plaintiff Theodore Haugland)*

**108.** Under *Small v. Badenhop*, 67 Haw. 626, 636, 701 P.2d 647, 654 (1985), unjust enrichment requires: (1) Plaintiff conferred a benefit on Amazon; (2) Amazon was aware of the

benefit; (3) Amazon retained the benefit; and (4) it would be inequitable to permit retention without compensation. *Porter v. Hu*, 116 Haw. 42, 56, 169 P.3d 994, 1008 (Ct. App. 2007) (restitution measured by value of benefit unjustly retained).

**109. Benefit Conferred.** Plaintiff conferred a specific, quantifiable financial benefit on Amazon through his individual Robux purchase transactions made on the Roblox platform hosted on Amazon's AWS infrastructure. Each Robux transaction processed on Amazon's platform — including Plaintiff's specific individual transactions — generated revenue for Roblox that was ultimately paid to Amazon as cloud service fees constituting a portion of Amazon's estimated $385 million annual AWS revenue from Roblox. Amazon was fully and contemporaneously aware of these revenues — they are tracked, processed, and reported through Amazon's AWS billing infrastructure.

**110. Inequity of Retention.** It would be inequitable to permit Amazon to retain the portion of its AWS Roblox revenues attributable to Plaintiff's specific individual transactions for the following independently sufficient reasons: (a) those revenues were derived from cloud infrastructure services whose AUP prohibited the specific uses to which Roblox's platform put them; (b) those revenues represent the financial benefit of Amazon's deliberate decision to prioritize $385 million in annual enterprise revenue over enforcement of the child safety and lawful-use standards Amazon's AUP commits it to maintain; (c) the retention of revenues generated through AUP-prohibited service provision — specifically, hosting content that sexually exploits minors, gambling operations, and harmful-to-minors platform architecture — constitutes enrichment whose character is inequitable and whose disgorgement is compelled by the same equitable principles that Hawaii courts have consistently applied in analogous commercial contexts.

**111.** Plaintiff individually seeks restitution of the portion of Amazon's AWS revenues from Roblox attributable to his specific individual transactions, together with the full disgorgement of Amazon's revenues from AUP-violating Roblox hosting during the period of Amazon's documented actual knowledge, as individual restitutionary relief in the amount established through discovery and expert analysis of Amazon's transaction records.

**COUNT VI**

PUBLIC NUISANCE

*(Haw. Rev. Stat. §§ 663-1, 666-1, 666-2, and 666-3)*

*(Individual Claim — Plaintiff Theodore Haugland)*

**112.** Hawaii Revised Statutes § 666-1 defines a nuisance as anything injurious to health, indecent or offensive to the senses, or obstructing the comfortable enjoyment of life or property by a considerable number of persons. HRS § 666-2 provides a private damages action for persons suffering special injury from a nuisance. HRS § 666-3 authorizes injunctive abatement. HRS § 663-1 imposes general tort liability for tortious acts causing injury. Hawaii courts recognize that defendants whose conduct causes widespread community harm to identifiable categories of persons bear liability in both damages and equity. *Larsen v. Pacesetter Systems, Inc.*, 74 Haw. 1, 17, 837 P.2d 1273, 1281 (1992).

**113. Amazon's Infrastructure as a Contributing Cause of Public Nuisance.** Amazon's continued provision of AWS cloud infrastructure services to Roblox Corporation — with actual knowledge of the documented AUP violations described throughout this First Amended Complaint — makes Amazon a contributing proximate cause of the public nuisance that the Roblox platform constitutes in Hawaii's community, on the following independently sufficient grounds:

**(a) Injurious to Health**: Amazon's infrastructure hosts the Roblox platform that generated 24,522 NCMEC CyberTipline reports of child sexual exploitation in 2022 — 67 documented reports of suspected child sexual exploitation per day, every day of the year — each of which represents a specific instance of exploitation whose transmission, storage, and platform operation occurred on Amazon's servers. A cloud infrastructure provider that hosts, stores, and distributes platform content associated with 24,522 annual child exploitation events is a contributing cause of a condition injurious to the health of the Hawaiian community and of communities across the United States.

**(b) Indecent and Offensive**: Amazon's EC2 and S3 infrastructure stores and serves the "condo" game Experience files — sexually explicit animated content and predatory contact solicitation environments — that constitute indecent and offensive content within the meaning of HRS § 666-

1(b), and whose storage and distribution through Amazon's infrastructure makes Amazon a contributing enabler of the indecency whose offensive character the attorney general enforcement actions and MDL No. 3166 proceedings document.

**(c) Obstruction of Comfortable Community Life**: Amazon's infrastructure-enabled Roblox platform degrades the safety of the digital spaces that Hawaii families — including Plaintiff and his minor children — inhabit, by operating a platform whose harmful architecture Amazon's own AUP prohibits and whose remediation Amazon's Customer Agreement authorizes but Amazon has chosen not to pursue for $385 million per year in hosting revenues.

**(d) Illegal Gambling Infrastructure**: Amazon's EC2 servers run the casino Experience game engines confirmed as illegal gambling by the *Colvin* ruling. Amazon's infrastructure is the specific computing resource on which Hawaii's total gambling prohibition is violated through Roblox's casino Experiences accessible to Hawaii residents including Plaintiff's minor children.

**114. Special Injury to Plaintiff.** Plaintiff suffered special injury beyond the generalized community harm — specifically: (a) the monetary loss from individual Robux transactions made on Amazon's hosted platform; (b) the specific exposure of his named minor children to the AWS-hosted platform's harmful conditions at their Halawa Heights residence; and (c) the specific violation of his parental authority through the false-birthday registration architecture processed on Amazon's database servers. Plaintiff seeks nuisance abatement under HRS § 666-3 and individual compensatory damages under HRS § 666-2.

**COUNT VII**

CIVIL CONSPIRACY

*(Individual Claim — Plaintiff Theodore Haugland)*

**115.** Under *Fought & Co. v. Steel Engineering and Erection, Inc.*, 87 Haw. 37, 55, 951 P.2d 487, 505 (1998), the elements of civil conspiracy under Hawaii law are: (1) a combination of two or more persons; (2) by concerted action; (3) to accomplish an unlawful purpose or a lawful purpose through unlawful means; (4) resulting in damage to the plaintiff. An express agreement is not required — a tacit or implied agreement inferred from the parties' coordinated conduct toward

a common illegal end is sufficient. *Id.* Each conspirator is jointly and severally liable for the acts of all co-conspirators committed in furtherance of the common scheme.

**116. The Combination — Amazon and Non-Party Roblox.** Amazon.com, Inc. and non-party Roblox Corporation constitute a combination of two or more persons for civil conspiracy purposes. Their combination is established through the AWS Customer Agreement — a bilateral commercial contract through which Amazon and Roblox established a continuing, commercially structured relationship whose specific terms, as documented throughout this Complaint, governed the cloud infrastructure services through which Roblox's AUP-violating platform operates.

**117. The Concerted Action.** The concerted action element is established by the following coordinated conduct between Amazon and non-party Roblox: (a) Amazon continuously provided cloud infrastructure services to Roblox — EC2, S3, RDS, DynamoDB, and CloudFront — with actual knowledge of the AUP violations described throughout this Complaint, allowing Roblox's violating platform to continue operating on Amazon's servers; (b) Roblox continuously represented to Amazon, through the AWS Customer Agreement compliance warranty, that its platform operated in compliance with applicable law and the AUP — representations that Roblox knew were false and that Amazon knew or should have known were false based on the documented knowledge timeline; (c) Amazon continuously processed Roblox's AUP-violating platform usage, provided technical support and infrastructure scaling that enabled Roblox's platform to serve increasing user volumes despite documented violations, and collected $385 million annually in exchange; and (d) Roblox continuously used Amazon's infrastructure to operate its AUP-violating platform — storing child exploitation content on Amazon's S3, running gambling games on Amazon's EC2, and housing children's personal data without adequate parental consent on Amazon's databases — in reliance on Amazon's ongoing decision not to invoke the Customer Agreement's suspension authority. This mutual, commercially structured, continuously renewed concerted action constitutes the coordination element of civil conspiracy under *Fought & Co.*

**118. The Unlawful Purpose and Unlawful Means.** The concerted scheme between Amazon and non-party Roblox constitutes the accomplishment of commercial revenue extraction through unlawful means — specifically: (a) Roblox's operation of a platform hosting child exploitation

content in violation of Amazon's AUP and the federal children's privacy regulatory framework referenced as background; (b) Roblox's operation of illegal gambling Experiences in violation of HRS §§ 712-1220 and 712-1222, confirmed by the *Colvin* ruling; (c) Roblox's deceptive commercial practices — dark-pattern Robux pricing, false safety representations — constituting violations of HRS § 480-2; and (d) Amazon's deliberate, financially-motivated non-enforcement of the AUP provisions that would otherwise have required cessation of each category of unlawful conduct. Each party to the conspiracy contributes a specific element of the unlawful means: Roblox contributes the platform operations whose harmful character generates the revenues; Amazon contributes the infrastructure without whose provision those operations could not occur at scale.

**119. Damages.** As a direct and proximate result of the civil conspiracy between Amazon and non-party Roblox, Plaintiff suffered the individual injuries documented in Section IV-J — the financial loss from individual Robux transactions, the privacy harm from his minor children's data processed through the conspiracy's AWS infrastructure, and the safety harm from exposure to the conspiracy's AWS-hosted harmful platform conditions. Under *Fought & Co.*, Amazon is jointly and severally liable for all damages arising from the conspiracy's unlawful acts.

## SECTION VI — PRAYER FOR RELIEF

**120.** WHEREFORE, Plaintiff Theodore Haugland, individually, as an individual consumer and as the parent and legal guardian of his minor children, respectfully demands the following individual relief and judgment against Defendant Amazon.com, Inc.:

### A. DECLARATORY RELIEF

A declaratory judgment pursuant to 28 U.S.C. § 2201 declaring that:

**(1)** Amazon's continued provision of AWS cloud computing services to non-party Roblox Corporation — in the face of documented, judicially confirmed, and attorney-general-established violations of Amazon's own Acceptable Use Policy — constitutes an unfair and deceptive trade practice in violation of Hawaii Revised Statutes § 480-2(a);

**(2)** Amazon's AUP, AWS compliance marketing, and AWS Abuse program representations — as applied to Amazon's hosting of Roblox's documented AUP-violating platform — constitute

deceptive trade practices within the meaning of Hawaii Revised Statutes § 481A-3(b)(5), (b)(7), (b)(9), and (b)(12);

**(3)** Plaintiff Theodore Haugland is an intended third-party beneficiary of the child safety and lawful-use provisions of the AWS Customer Agreement between Amazon.com, Inc. and non-party Roblox Corporation, entitled to enforce Amazon's obligations under those provisions pursuant to Hawaii Revised Statutes § 490:2-318 and *Pancakes of Hawaii, Inc. v. Pomare Properties Corp.*, 85 Haw. 300 (1997);

**(4)** Amazon's $385 million in estimated annual cloud service revenues from Roblox, derived from infrastructure services whose provision Amazon's own AUP prohibited given Roblox's documented violations, constitutes unjust enrichment subject to disgorgement under Hawaii common law; and

**(5)** Amazon's continued hosting of non-party Roblox's AWS infrastructure makes Amazon a contributing cause of the public nuisance that Roblox's platform constitutes in Hawaii's community within the meaning of Hawaii Revised Statutes §§ 663-1 and 666-1.

**B. INJUNCTIVE RELIEF**

A permanent mandatory injunction pursuant to Hawaii Revised Statutes §§ 480-13(a), 481A-4, and 666-3, and Federal Rule of Civil Procedure 65, requiring Amazon.com, Inc. to:

**(1) Enforce AUP or Suspend Services**: Within **ninety (90) days** of entry of the injunction, either: (a) require non-party Roblox Corporation to provide verified, independently audited documentation of compliance with each violated AUP provision — specifically the prohibitions on storage and transmission of content sexually exploiting minors, facilitation of applicable law violations, and harmful-to-minors conduct — and to implement technically verified remediation of each documented violation within that 90-day period; **or** (b) suspend all AWS cloud computing services to Roblox Corporation pending verified compliance to this Court's satisfaction, with restoration of AWS services conditioned on independent compliance verification;

**(2) Implement Contractual Compliance Monitoring**: Within **sixty (60) days** of entry of the injunction, implement contractual compliance monitoring obligations in Amazon's AWS service agreements with non-party Roblox Corporation — including mandatory quarterly AUP compliance

certifications, the right of Amazon's Trust & Safety team to audit Roblox's AWS usage for AUP compliance on a semi-annual basis, and the specific obligation to report to this Court any identified AUP violation within thirty (30) days of identification — as conditions of continued AWS service provision;

**(3) File Compliance Certification**: File a compliance certification with this Court within **one hundred twenty (120) days** of entry of the injunction, signed by Amazon's Chief Compliance Officer and verified under penalty of perjury, confirming that either: (a) Roblox's use of AWS services has been independently verified as compliant with each violated AUP provision; or (b) AWS services to Roblox Corporation have been suspended pending such verification; and

**(4) Special Master Monitoring**: Submit to the appointment of a Special Master at Amazon's expense pursuant to Federal Rule of Civil Procedure 53, to monitor Amazon's compliance with the injunctive relief ordered herein, with quarterly reports to this Court for a period of five (5) years from entry of the injunction.

## C. INDIVIDUAL COMPENSATORY DAMAGES

Individual compensatory damages in amounts to be determined at trial representing:

**(1)** The total monetary amount of all Robux purchases made by Plaintiff individually through the Roblox platform on Amazon's AWS-hosted infrastructure during the class period, in amounts to be established through Amazon's AWS transaction records and Roblox's platform billing records in discovery;

**(2)** The economic value of Plaintiff's minor children's personal information collected through Roblox's AWS-hosted platform without legally adequate parental consent, measured by reference to the commercial market value of equivalent behavioral and identity data sets;

**(3)** The benefit-of-the-bargain damages arising from Amazon's breach of its third-party beneficiary obligations under the AWS Customer Agreement (Count IV); and

**(4)** All consequential damages arising from Amazon's negligent enablement of child exploitation through its AUP-violating infrastructure provision (Count III), including damages attributable to the specific safety harms suffered by Plaintiff's minor children documented in paragraph 88–92.

## D. MANDATORY TREBLE DAMAGES

Pursuant to Hawaii Revised Statutes § 480-13(b)(1), an award of **mandatory treble damages** equal to the greater of: **(a) $1,000** per proven violation of HRS § 480-2; or **(b) three times** Plaintiff's individual actual damages as established at trial — the trebling being mandatory and non-discretionary upon a finding of § 480-2 violation by a consumer who suffered ascertainable loss of money or property. *Courbat v. Dahana Ranch, Inc.*, 111 Haw. 254, 265, 141 P.3d 427, 438 (2006).

**E. INDIVIDUAL RESTITUTION AND DISGORGEMENT**

Pursuant to Count V (Unjust Enrichment), individual restitution and disgorgement from Amazon.com, Inc. representing:

**(1)** The portion of Amazon's estimated $385 million annual AWS revenues from Roblox attributable to Plaintiff's specific individual platform transactions during the documented actual knowledge period — the period commencing no later than the filing of the *Colvin* complaint in August 2023, when Amazon possessed specific federal-court-filed notice of Roblox's AUP gambling violations — through the date of judgment; and

**(2)** Pre-judgment interest at the Hawaii statutory rate from the date of each AUP-violating transaction through the date of judgment.

**F. MANDATORY ATTORNEYS' FEES AND COSTS**

Pursuant to Hawaii Revised Statutes § 480-13(b)(2), which makes attorneys' fees **mandatory and non-discretionary** upon entry of judgment for a prevailing consumer plaintiff on a HRS § 480-2 claim, an award of reasonable attorneys' fees calculated at the prevailing market rate for complex individual consumer litigation in the District of Hawaii, together with all litigation costs and expenses incurred in prosecuting this First Amended Complaint.

**G. PUBLIC NUISANCE ABATEMENT**

An order of individual public nuisance abatement pursuant to Hawaii Revised Statutes § 666-3, requiring Amazon to take such specific remedial steps as this Court determines are necessary and sufficient to abate Amazon's contribution to the public nuisance documented in Count VI — including the specific enforcement and suspension measures identified in B(1) above — under a court-supervised timeline and subject to Special Master monitoring as provided in B(4).

### H. SUCH OTHER AND FURTHER INDIVIDUAL RELIEF

Such other and further individual relief, legal or equitable, as this Court deems just, necessary, and appropriate to redress the violations alleged herein, to vindicate Plaintiff's individual rights as a consumer and parent, and to prevent Amazon's continued enabling of documented child exploitation through its AWS cloud infrastructure.

## VII — DEMAND FOR JURY TRIAL

Pursuant to the Seventh Amendment to the United States Constitution and Federal Rule of Civil Procedure 38(b), Plaintiff Theodore Haugland demands trial by jury on all issues and claims so triable in this individual action, including all questions of liability, actual damages, treble damages, and the factual predicates for injunctive relief.

***Respectfully Submitted,***

**/Date/** *August 12, 2026* **/Signature/** *Theodore Haugland*

Theodore Haugland

99-009 Kalaloa St, Ste D2016

Aiea, Honolulu County, HI

Telephone: (202)933-3332

Facsimile: (202)933-3335

administrator@civillawinc.com

Plaintiff, *Propria Persona*